Brian E. Pastuszenski (*pro hac vice*)
bpastuszenski@goodwinprocter.com
Inez H. Friedman-Boyce (*pro hac vice*)
ifriedmanboyce@goodwinprocter.com
Adam Slutsky (*pro hac vice*)
aslutsky@goodwinprocter.com
**GOODWIN PROCTER LLP**
53 State Street
Boston, Massachusetts  02109
Telephone:  617-570-1000
Facsimile:  617-523-1231

Lloyd Winawer (SBN 157823)
lwinawer@goodwinprocter.com
**GOODWIN PROCTER LLP**
601 South Figueroa Street, 41st Floor
Los Angeles, California  90017
Telephone:  213-426-2500
Facsimile:  213-623-1673

Daniel Roeser (*pro hac vice*)
droeser@goodwinprocter.com
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY  10018
Telephone:  212-813-8800
Facsimile:  212-355-3333

Attorneys for the Countrywide
Defendants in *Franklin Bank* and
*Guaranty Bank*

Marc T.G. Dworsky (SBN 157413)
marc.dworsky@mto.com
James C. Rutten (SBN 201791)
james.rutten@mto.com
Erin J. Cox (SBN 267954)
erin.cox@mto.com
**MUNGER, TOLLES & OLSON LLP**
355 South Grand Avenue, 35th Floor
Los Angeles, California  90071-1560
Telephone:  213-683-9100
Facsimile:  213-687-3702

Achyut J. Phadke (SBN 261567)
achyut.phadke@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, California  94105-9207
Telephone:  415-512-4000
Facsimile:  415-512-4077

Attorneys for Defendant Banc of
America Securities LLC in *Security
Savings Bank*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION | Case No. 11-ML-02265-MRP (MANx)<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S AMENDED COMPLAINTS**<br><br>Date/Time:  July 30, 2013, 11:00 a.m.<br>Courtroom:  12<br>Judge:      Hon. Mariana R. Pfaelzer |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FRANKLIN BANK, S.S.B.,<br><br>        Plaintiff,<br>      v.<br>COUNTRYWIDE SECURITIES CORPORATION, *et al.*,<br><br>        Defendants. | Case No. 12-CV-03279-MRP (MANx) |

| | |
|---|---|
| 1 | FEDERAL DEPOSIT INSURANCE | Case No. 12-CV-06690-MRP (MANx) |

FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SECURITY SAVINGS BANK,

Plaintiff,

v.

BANC OF AMERICA SECURITIES LLC, *et al.*,

Defendants.

Case No. 12-CV-06690-MRP (MANx)

FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR GUARANTY BANK,

Plaintiff,

v.

COUNTRYWIDE SECURITIES CORPORATION, *et al.*,

Defendants.

Case No. 12-CV-08558-MRP (MANx)

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS .................................................................................... 5

ARGUMENT ......................................................................................................... 12

I.   THE 1933 ACT CLAIMS IN *GUARANTY BANK* SHOULD BE DISMISSED AS TIME-BARRED. ............................................................. 12

    A.   The 1933 Act's Three-Year Statute of Repose And One-Year Statute Of Limitations Have Expired. ........................................... 13

        1.   As In *United Western Bank*, The 1933 Act's Three-Year Statute Of Repose Has Expired. ................................. 13

        2.   As In *Strategic Capital Bank*, The 1933 Act's One-Year Statute Of Limitations Has Expired. ........................... 13

            a.   A Reasonably Diligent Investor Should Have Discovered The Alleged Misrepresentations Before August 21, 2008. ..................................... 14

            b.   This Court Rejected Plaintiff's Virtually Identical Statute Of Limitations Allegations In *Strategic Capital Bank*. ....................................... 19

    B.   *American Pipe* Tolling Does Not Apply. ............................... 24

        1.   *Luther* Did Not Trigger *American Pipe* Tolling Because It Was Filed In State Court. ................................ 25

        2.   The *Luther* Named Plaintiffs Did Not Have The Standing Necessary To Trigger *American Pipe* Tolling In Any Event. .................................................................... 27

II.  THE FDIC'S CLAIMS UNDER THE TEXAS SECURITIES ACT AND THE NEVADA SECURITIES ACT, AND ITS REMAINING CLAIM UNDER SECTION 11 IN *SECURITY SAVINGS BANK*, SHOULD BE DISMISSED. ................................................................ 31

    A.   Plaintiff's Claims In *Guaranty Bank* Are Time-Barred. ............. 32

        1.   Plaintiff's Claims Are Based On Information That Was Publicly Available More Than Three Years Before The FDIC Was Appointed Receiver For Guaranty Bank. ............. 32

        2.   FIRREA's Extender Provision Cannot Save Plaintiff's Stale Claims In *Guaranty Bank*. ................................. 33

B.    Plaintiff Does Not Plead An Actionable Misrepresentation in *Guaranty Bank*, *Franklin Bank*, or *Security Savings Bank*. ............... 35

1.    Owner-Occupancy Status (*Guaranty Bank* Am. Compl. ¶¶ 68-79; *Franklin Bank* Am. Compl. ¶¶ 68-79; *Security Savings Bank* Am. Compl. ¶¶ 64-75). ........................................... 35

2.    Additional Liens, LTVs, and Appraisals (*Guaranty Bank* Am. Compl. ¶¶ 34-67; *Franklin Bank* Am. Compl. ¶¶ 34-67; *Security Savings Bank* Am. Compl. ¶¶ 30-63). ................. 36

a.    Additional Liens. ............................................. 36

b.    LTVs and Appraisals. ....................................... 37

3.    Underwriting Standards (*Guaranty Bank* Am. Compl. ¶¶ 80-97; *Franklin Bank* Am. Compl. ¶¶ 80-97; *Security Savings Bank* Am. Compl. ¶¶ 76-93). ...................................... 43

4.    Credit Ratings (*Guaranty Bank* Am. Compl. ¶¶ 98-103; *Franklin Bank* Am. Compl. ¶¶ 98-103; *Security Savings Bank* Am. Compl. ¶¶ 94-99). ...................................... 46

CONCLUSION ............................................................................ 47

# TABLE OF AUTHORITIES

**Page(s)**

*Aegis Ins. Holding Co. v. Gaiser*,
    No. 04-05-00938, 2007 WL 906328 (Tex. App. Mar. 28, 2007)................41, 47

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
    824 F. Supp. 2d 1164 (C.D. Cal. 2011)......................................................passim

*Am. Int'l Grp., Inc. v. Countrywide Fin. Corp.*,
    834 F. Supp. 2d 949 (C.D. Cal. 2012)................................................................27

*Am. Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) ............................................................................3, 25, 26

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................1, 21, 22, 35

*Baroi v. Platinum Condo. Dev., LLC*,
    No. 09-cv-00671, 2012 WL 2847919 (D. Nev. 2012) ...............................41, 47

*Basch v. Ground Round, Inc.*,
    139 F.3d 6 (1st Cir. 1998) .............................................................................26

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................passim

*Boilermakers Nat'l Annuity Trust Fund v. WAMU Mortg. Pass Through Certs., Series AR1*,
    748 F. Supp. 2d 1246 (W.D. Wash. 2010) ..................................................37, 46

*Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*,
    878 F. Supp. 2d 1009 (C.D. Cal. 2011)........................................................32, 45

*Chardon v. Fumero Soto*,
    462 U.S. 650 (1983) ......................................................................................26

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008).........................................................................25

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991) ...........................................................................41

*Dexia Holdings, Inc. v. Countrywide Fin. Corp.*,
   No. 11-cv-07165, 2012 WL 1798997 (C.D. Cal. Feb. 17, 2012) ..................... 27

*Emps.' Ret. Sys. of Gov't of V.I. v. J.P. Morgan Chase & Co.*,
   804 F. Supp. 2d 141 (S.D.N.Y. 2011) .......................................... 37, 47

*Escalon v. World Grp. Sec., Inc.*,
   No. 07-cv-214, 2008 WL 5572823 (N.D. Tex. Nov. 14, 2008) ...................... 31

*FDIC as Receiver for Colonial Bank v. Countrywide Sec. Corp.*,
   No. 12-cv-6911, 2013 WL 1598680 (C.D. Cal. Apr. 8, 2013) ................. passim

*FDIC as Receiver for Security Savings Bank v. Countrywide Fin. Corp.*,
   No. 12-cv-06692, 2013 WL 1191785 (C.D. Cal. Mar. 21, 2013) .............. passim

*FDIC as Receiver for Strategic Capital Bank v. Countrywide Fin. Corp.*,
   No. 12-cv-4354, 2012 WL 5900973 (C.D. Cal. Nov. 21, 2012) .............. passim

*FDIC as Receiver for United W. Bank v. Countrywide Fin. Corp.*,
   No. 11-cv-10400, slip op. (C.D. Cal. June 15, 2012) .................... passim

*FDIC as Receiver for United W. Bank v. Countrywide Fin. Corp.*,
   No. 11-cv-10400, 2013 WL 49727 (C.D. Cal. Jan. 3, 2013) ................ passim

*Footbridge Ltd. v. Countrywide Home Loans, Inc.*,
   No. 09 Civ. 4050, 2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010) .............. 43, 46

*Freidus v. ING Groep N.V.*,
   736 F. Supp. 2d 816 (S.D.N.Y. 2010) .......................................... 21

*Harris v. County of Orange*,
   682 F.3d 1126 (9th Cir. 2012) ................................................ 40

*Hinton v. Pac. Enters.*,
   5 F.3d 391 (9th Cir. 1993) ................................................... 24

*In re Countrywide Fin. Corp. Sec. Litig.*,
   554 F. Supp. 2d 1044, 1058 (C.D. Cal. 2008) .................................. 17

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132, 1145 (C.D. Cal. 2008) .................................. 18

1
2

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
    465 F. Supp. 2d 687 (S.D. Tex. 2006).................................................25

3
4

*In re IndyMac Mortg.-Backed Sec. Litig.*,
    718 F. Supp. 2d 495 (S.D.N.Y. 2010).......................................43, 47

5
6

*In re Salomon Analyst Level 3 Litig.*,
    373 F. Supp. 2d 248 (S.D.N.Y. 2005).................................................42

7
8

*In re Stacs Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996)............................................................31

9

*In re Textrainer P'ship Sec. Litig.*,
    No. C 05-0969, 2006 WL 1328851 (N.D. Cal. May 15, 2006) .......................42

10
11

*In re U.S. Foodservice Inc. Pricing Litig.*,
    No. 07 MD 1894, 2009 WL 5064468 (D. Conn. Dec. 15, 2009).....................46

12
13

*Interscope Records v. Rodriguez*,
    No. 06-cv-2485, 2007 WL 2408484 (S.D. Cal. Aug. 17, 2007) ......................44

14
15

*Knollenberg v. Harmonic, Inc.*,
    152 Fed. App'x 674 (9th Cir. 2005)....................................................31

16
17

*Levin v. Citibank, N.A.*,
    No. C 09-0350, 2009 WL 3008378 (N.D. Cal. Sept. 17, 2009).....................47

18
19

*Logan v. VSI Meter Servs., Inc.*,
    No. 10-cv-2478, 2012 WL 928400 (S.D. Cal. Mar. 19, 2012) .......................44

20

*Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.*,
    652 F. Supp. 2d 576 (E.D. Pa. 2009).................................................45

21
22

*Lyon v. Agusta S.P.A.*,
    252 F.3d 1078 (9th Cir. 2001)..........................................................33

23
24

*Lyons v. Bank of Am., N.A.*,
    No. C 11-1232, 2011 WL 6303390 (N.D. Cal. Dec. 16, 2011) .......................46

25
26

*Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.*,
    792 F.2d 341 (3d Cir. 1986)............................................................34

27
28

*Mass. Mut. Life Ins. Co. v. Countrywide Fin. Corp.*,
 No.11-cv-10414, 2012 WL 3578666 (C.D. Cal. Aug. 17, 2012)......................35

*Mass. Mut. Life Ins. Co. v. Residential Funding Co. LLC*,
 843 F. Supp. 2d 191 (D. Mass. 2012)...................................................44

*McAfee v. Francis*,
 No. 11-cv-00821, 2012 WL 762118 (N.D. Cal. Mar 6, 2012).........................47

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
 722 F. Supp. 2d 1157 (C.D. Cal. 2010).......................................passim

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
 No. 10-cv-00302, 2011 WL 4389689 (C.D. Cal. May 5, 2011) ................passim

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
 No. 08 Civ 5653, 2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010)....................43

*N.J. Carpenters Health Fund v. NovaStar Mortg., Inc.*,
 No. 08 Civ 5310, 2012 WL 1076143 (S.D.N.Y. Mar. 29, 2012)....................44

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
 709 F.3d 109 (2d Cir. 2013) ............................................................44

*Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*,
 No. 11-cv-06521, slip op. (C.D. Cal.) (Mar. 15, 2012 Tentative Ruling)..........34

*Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*,
 No. 11-cv-06521, slip op. (C.D. Cal.) (Mar. 14, 2013 Tentative Ruling)..........30

*Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*,
 No. 11-cv-05887, slip op. (C.D. Cal.) (Dec. 19, 2011 Tentative Ruling)..........34

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
 693 F.3d 145 (2d Cir. 2012) ............................................................28

*Parrino v. FHP, Inc.*,
 146 F.3d 699 (9th Cir. 1998) .......................................................40, 41

*Paull v. Capital Res. Mgmt., Inc.*,
 987 S.W.2d 214 (Tex. App. 1999) ..................................................42, 47

*Plumbers' & Pipefitters' Local No. 562 Supp. Plan & Trust v. J.P. Morgan Acceptance Corp.*,
  No. 08 Civ. 1713, 2012 WL 601448 (S.D.N.Y. Feb. 23, 2012) ........................44

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*,
  714 F. Supp. 2d 475 (S.D.N.Y. 2010) ....................................................31

*Putnam Bank v. Countrywide Fin. Corp.*,
  860 F. Supp. 2d 1062 (C.D. Cal. 2012)............................................12, 27, 28, 30

*Resolution Trust Co. v. Olson*,
  768 F. Supp. 283 (D. Ariz. 1991) .......................................................34

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
  802 F. Supp. 2d 1125 (C.D. Cal. 2011)..........................................13, 21, 24, 27

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
  692 F. Supp. 2d 387 (S.D.N.Y. 2010) .......................................................37, 43

*Vaught v. Showa Denko K.K.*,
  107 F.3d 1137 (5th Cir. 1997) ..........................................................25

*Vivendi SA v. T-Mobile USA Inc.*,
  586 F.3d 689 (9th Cir. 2009) ...........................................................44

*W. & S. Life Ins. Co. v. Countrywide Fin. Corp.*,
  No. 11-cv-07166, 2012 WL 1097244 (C.D. Cal. Mar. 9, 2012)........................27

*Weiner v. Klais & Co. Inc.*,
  108 F.3d 86 (6th Cir. 1997) ............................................................41

**STATUTES**

12 U.S.C. § 1821(d)(14) ...................................................... 33, 34

15 U.S.C. § 77m ............................................................... 12

Tex. Rev. Civ. Stat. Ann. art. 581–33(H)(2) ...................................31

Tex. Rev. Civ. Stat. Ann. art. 581–33(M) ......................................34

**OTHER AUTHORITIES**

17 C.F.R. § 230.405 ..........................................................31

75 Fed. Reg. 77450 .................................................................................................. 37

1

## **TABLE OF DEFINED TERMS**

| | |
|---|---|
| **AVM:** | Automated valuation model |
| **CFC:** | Defendant Countrywide Financial Corporation |
| **CoreLogic:** | CoreLogic, Inc. |
| **Countrywide Defendants:** | CFC, CSC, CWALT, and CWMBS, collectively |
| ***Countrywide MBS MDL*:** | *In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation*, MDL Docket No. 2265 |
| **CSC:** | Defendant Countrywide Securities Corporation |
| **CWALT:** | Defendant CWALT, Inc. |
| **CWMBS:** | Defendant CWMBS, Inc. |
| **Defendants:** | The Countrywide Defendants and Defendant Banc of America Securities LLC, collectively |
| **Derivative Complaint:** | Complaint in *In re Countrywide Fin. Corp. Derivative Litig.*, No. 07-cv-06923 (C.D. Cal. filed Feb. 15, 2008) |
| **FDIC:** | Plaintiff Federal Deposit Insurance Corporation |
| **Franklin Bank:** | Franklin Bank, S.S.B. |
| ***Franklin Bank*:** | *FDIC as Receiver for Franklin Bank, S.S.B. v. Countrywide Securities Corp., et al.*, No. 12-cv-03279 |
| ***Guaranty Bank*:** | *FDIC as Receiver for Guaranty Bank v. Countrywide Securities Corp., et al.*, No. 12-cv-08558 |
| **JPML:** | Judicial Panel on Multidistrict Litigation |
| **LTV:** | Loan-to-value ratio |
| ***Luther*:** | *Luther v. Countrywide Home Loans Servicing LP*, No. BC380698 (Cal. Super. Ct. filed Nov. 14, 2007), and *Washington State Plumbing & Pipefitting Pension Trust v. Countrywide Financial Corp.*, No. BC392571 (Cal. Super. Ct. filed June 12, 2008), collectively |
| **MBS:** | Mortgage-backed securities |

1

**Original *Luther* Complaint:**   Complaint in *Luther v. Countrywide Home Loans Servicing LP*, No. BC380698 (Cal. Super. Ct. filed Nov. 14, 2007)

2

3

**Plaintiff:**   Plaintiff Federal Deposit Insurance Corporation

4

**Securities Complaint:**   Complaint in *In re Countrywide Fin. Corp. Sec. Litig.*, No. 07-cv-05295 (C.D. Cal. filed Apr. 11, 2008)

5

6

***Security Savings Bank*:**   *FDIC as Receiver for Security Savings Bank v. Banc of America Securities, LLC*, No. 12-cv-06690

7

8

**1933 Act:**   Securities Act of 1933

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    The Countrywide Defendants respectfully submit this memorandum in

2    support of their motions to dismiss Plaintiff's amended complaints in *Guaranty*

3    *Bank* and *Franklin Bank*, and Defendant Banc of America Securities LLC

4    respectfully submits this memorandum in support of its motion to dismiss Plaintiff's

5    amended complaint in *Security Savings Bank*.[1]

6    ### **PRELIMINARY STATEMENT**

7    The FDIC's carbon-copy 1933 Act and state securities law claims in the three

8    amended complaints at issue should be dismissed.  First, the 1933 Act claims in

9    *Guaranty Bank* should be dismissed as time-barred for the same reasons that the

10   FDIC's identical 1933 Act claims were dismissed as time-barred in *United Western*

11   *Bank I*,[2] *Strategic Capital Bank*,[3] and *Colonial Bank*.[4]  Second, all of the claims in

12   *Franklin Bank*, *Security Savings Bank*, and *Guaranty Bank* fail to state a claim

13   under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556

14   U.S. 662 (2009).

15   ***The 1933 Act Claims in Guaranty Bank Should Be Dismissed as Time-***

16   ***Barred.***  The FDIC was appointed receiver for Guaranty Bank (a now-defunct bank)

17   on August 21, 2009.  *Guaranty Bank* Am. Compl. ¶ 6.  It brings claims under

18   Sections 11, 12(a)(2), and 15 of the 1933 Act based on eight Countrywide MBS that

19   _____

20   [1] In accordance with this Court's stipulated orders, the Countrywide Defendants filed an initial motion to dismiss the amended complaint in *Franklin Bank* on December 18, 2012, and Banc of America Securities LLC filed an initial motion to dismiss the amended complaint in *Security Savings Bank* on December 14, 2012, both of which addressed arguments for dismissal based on jurisdiction, venue, and the applicable statutes of limitations and repose.  This motion addresses all other grounds for dismissal of Plaintiff's remaining claims in *Franklin Bank* and *Security Savings Bank*, as well as all grounds for dismissal in *Guaranty Bank*.  Consistent with this Court's Order dated April 8, 2013, and the Joint Stipulation filed on April 22, 2013, Defendants in all three actions are submitting a single consolidated brief.

25   [2] *FDIC as Receiver for United W. Bank v. Countrywide Fin. Corp.*, No. 11-cv-10400, slip op. (C.D. Cal. June 15, 2012) (Dkt. No. 91).

26   [3] *FDIC as Receiver for Strategic Capital Bank v. Countrywide Fin. Corp.*, No. 12-cv-4354, 2012 WL 5900973 (C.D. Cal. Nov. 21, 2012).

27   [4] *FDIC as Receiver for Colonial Bank v. Countrywide Sec. Corp.*, No. 12-cv-6911, 2013 WL 1598680 (C.D. Cal. Apr. 8, 2013).

were offered to the public and purchased by Guaranty Bank on or before August 21, 2006 (*i.e.*, more than three years before the FDIC's appointment as receiver for Guaranty Bank). *See Guaranty Bank* Am. Compl. ¶ 29, Schedules 1–8. Therefore, the 1933 Act's three-year statute of repose and one-year statute of limitations both expired before the FDIC was appointed receiver (and before the FDIC extender statute potentially could take effect).

Consistent with this Court's ruling in *United Western Bank I*, because the statute of repose ran before the FDIC was appointed receiver, Plaintiff's claims are time-barred. *See* slip op. at 5. In addition, the statute of limitations necessarily expired before the FDIC was appointed receiver in this case because, as this Court held in *Strategic Capital Bank* and *Colonial Bank*, a reasonably diligent investor should have discovered the Countrywide Defendants' alleged misrepresentations before August 21, 2008 (*i.e.*, more than one year before Plaintiff became receiver for Guaranty Bank). *See Strategic Capital Bank*, 2012 WL 5900973, at *8 ("By May 22, 2008, SCB knew that misrepresentations were made in the Offering Documents. The media sources, complaints and judgments created a roadmap for holders of RMBS to sue Countrywide for its inflated appraisals, abandonment of underwriting standards and false LTVs, in contravention to representations in the Offering Documents."); *Colonial Bank*, 2013 WL 1598680, at *1 ("[A] reasonably diligent plaintiff had enough information about false statements in the Offering Documents of [Countrywide] securities to file a well-pled complaint before August 14, 2008."). Further, Plaintiff's allegations about "specific loans" underlying the Certificates and the rating downgrades of those Certificates, *Guaranty Bank* Am. Compl. ¶ 151, are irrelevant to the repose period and do not extend the limitations period because "[t]he FDIC cannot rely upon the relative lack of information specific to the securities [Guaranty Bank] actually purchased, and cannot hide behind the failure of the credit rating agencies to downgrade those certificates." *Strategic Capital Bank*, 2012 WL 5900973, at *8.

For the same reasons stated in this Court's many prior decisions, *American Pipe*[5] tolling cannot save the FDIC's stale 1933 Act claims.  In *Strategic Capital Bank*, *Security Savings Bank*,[6] and *Colonial Bank*, this Court held that *American Pipe* did not toll the statute of limitations (or the statute of repose) for the FDIC's 1933 Act claims for two reasons:  (1) *Luther* did not trigger *American Pipe* tolling because it was not filed in federal court under Federal Rule of Civil Procedure 23, but rather in state court; and (2) in any event, the *Luther* named plaintiffs did not have the standing necessary to trigger *American Pipe* tolling.  *Strategic Capital Bank*, 2012 WL 5900973, at *9-14; *Security Savings Bank*, 2013 WL 1191785, at *6-12; *Colonial Bank*, 2013 WL 1598680, at *2.  This Court held that "*American Pipe* tolling cannot apply to a class action filed in state court, even if the claims in the state class action are federal."  *Strategic Capital Bank*, 2012 WL 5900973, at *13; *accord Security Savings Bank*, 2013 WL 1191785, at *8, 12; *Colonial Bank*, 2013 WL 1598680, at *2.  *American Pipe* tolling applies only where a class action is filed in federal court pursuant to Federal Rule of Civil Procedure 23.  *See Strategic Capital Bank*, 2012 WL 5900973, at *13; *Security Savings Bank*, 2013 WL 1191785, at *8, 12; *Colonial Bank*, 2013 WL 1598680, at *2.  In addition, this Court held that, were *American Pipe* tolling to apply at all, "[t]olling under *American Pipe* is only appropriate when the named plaintiff had standing to assert the claim."  *Strategic Capital Bank*, 2012 WL 5900973, at *9; *accord Security Savings Bank*, 2013 WL 1191785, at *6-7.  It is undisputed that the *Luther* named plaintiffs did not have standing to sue on the Countrywide MBS tranches in which Guaranty Bank invested.  *See Strategic Capital Bank*, 2012 WL 5900973, at *8; *Security Savings Bank*, 2013 WL 1191785, at *7; *United Western Bank I*, slip op. at 5.  For both of these reasons, the filing of *Luther* in California state court did not toll the statute of

---

[5] *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).

[6] *FDIC as Receiver for Security Savings Bank v. Countrywide Fin. Corp.*, No. 12-cv-06692, 2013 WL 1191785 (C.D. Cal. Mar. 21, 2013).

1    limitations for Plaintiff's 1933 Act claims, and those claims were time-barred when

2    the FDIC became receiver (and before the FDIC extender statute potentially could

3    take effect).

4         ***The FDIC Fails to State a Claim in Franklin Bank, Security Savings Bank,***

5    ***or Guaranty Bank.***  The FDIC's allegations regarding owner-occupancy status,

6    additional liens, LTVs and appraisals, underwriting standards, and credit ratings also

7    fail to state a claim under the *Twombly/Iqbal* plausibility standard.[7]  First, this Court

8    has dismissed identical allegations relating to owner-occupancy status and

9    additional liens.  *See FDIC as Receiver for United W. Bank v. Countrywide Fin.*

10   *Corp.*, No. 11-cv-10400, 2013 WL 49727, *2 & n.4 (C.D. Cal. Jan. 3, 2013)

11   ("*United Western Bank II*").  Second, although this Court previously has upheld

12   allegations relating to LTVs and appraisals, there is new information that warrants

13   the Court revisiting those issues.  More specifically, that information consists of an

14   affidavit filed by CoreLogic, Inc. ("CoreLogic")—the source of the AVM on which

15   the FDIC bases its LTV and appraisal-related allegations—in another lawsuit

16   pending in New York Supreme Court in which the plaintiff challenges disclosures

17   made in MBS offering materials.[8]  This affidavit (which this Court may judicially

18   notice) shows that the FDIC's AVM allegations simply are not plausible.

19   CoreLogic affirms in that affidavit that "no professional" would do what the FDIC

20

21   [7] On March 21, 2013, this Court issued an order in *Franklin Bank* finding that the FDIC's claims under Section 11 of the 1933 Act were time-barred for two of the six
22   Countrywide MBS at issue (CWALT 2006-2CB and CWHL 2006-J1).  Plaintiff's Texas Securities Act claims apply to four of Franklin Bank's six MBS purchases:
23   (i) CWALT 2006-2CB (tranche A-13); (ii) CWHL 2006-J1 (tranche 3-A-1); (iii) CWHL 2007-5 (tranche A-51); and (iv) CWHL 2007-17 (tranche 3-A-1).  Also
24   on March 21, 2013, this Court issued an order in *Security Savings Bank* finding that the FDIC's federal claims were all time-barred, except for the FDIC's Section 11
25   claim based on CWALT 2006-21CB.  Plaintiff's Nevada Securities Act claims apply to two of Security Savings Bank's MBS purchases: (i) CWALT 2006-29T1
26   (tranche B-1); and (ii) CWALT 2006-26CB (tranche B-2).
     [8] Aff. of Jacqueline Doty in Supp. of Mot. to Exclude Expert Test. of Dr. Marcia J.
27   Courchane*, New York v. First Am. Corp. & First Am. Eappraiseit*, No. 406796/07 (N.Y. Sup. Ct., filed May 9, 2012), at ¶ 4 (hereinafter "CoreLogic Aff.") (Request
28   for Judicial Notice ("RJN") Ex. 36).

seeks to do in its complaints here—use a retrospective AVM analysis to second-guess real-time appraisals by licensed real estate appraisers.[9]  CoreLogic states, among other things, that "there is no way to discern from AVMs the cause of any difference between an AVM's point estimate and the opinion of value contained in the appraisal" and that "AVMs frequently produce entirely *inaccurate* values in rapidly fluctuating markets."[10]  As a result, CoreLogic warns explicitly that "[p]rofessionals in the real estate field should not . . . rely solely on CoreLogic (or other) AVMs to make reliable determinations of the reasonableness of value opinions offered by licensed or certified appraisers."[11] Yet that is precisely what the FDIC seeks to do here.  CoreLogic's unequivocal disavowal of the FDIC's attempted use of CoreLogic's AVM undermines the plausibility of the LTV and appraisal-related allegations, and all of those allegations should be stricken and all claims based on them should be dismissed.

In sum, Plaintiff's amended complaint in *Guaranty Bank* is time-barred and fails to state a claim.  Plaintiff's amended complaints in *Franklin Bank* and *Security Savings Bank* fail to state a claim with respect to the remaining offerings at issue.  All three cases should be dismissed in their entirety and with prejudice.

## STATEMENT OF FACTS

The FDIC, in its capacity as receiver for various failed banks, has filed virtually identical complaints across the country against a variety of financial institutions alleging that MBS issuers, underwriters, and brokers misrepresented the characteristics and risks of MBS.  Nine such complaints are in the *Countrywide MBS MDL*, and three of those complaints are the subject of this motion to dismiss.

**Guaranty Bank.**  Between July 2005 and April 2006, Guaranty Bank purchased eight Countrywide MBS.  *See Guaranty Bank* Am. Compl. ¶¶ 1, 29,

---

[9] CoreLogic Aff.  at ¶ 4.
[10] CoreLogic Aff. at ¶¶ 3, 8.
[11] CoreLogic Aff. at ¶ 3.

1    Schedules 1–8.[12]  On August 21, 2009 (*i.e.*, more than three years after Guaranty

2    Bank's purchases), the FDIC was appointed receiver for Guaranty Bank.  *Id.* ¶ 6.

3    On August 17, 2012 (*i.e.*, more than six years after Guaranty Bank's purchases), the

4    FDIC filed a Complaint in Texas state court.  Dkt. No. 1, Exs. 1-1, 1-2.  The

5    Countrywide Defendants removed this case to the United States District Court for

6    the Western District of Texas on September 20, 2012, Dkt. No. 1, and the JPML

7    issued a final order transferring the case to the *Countrywide MBS MDL* on

8    October 5, 2012, Dkt. No. 15.  Plaintiff filed a motion to remand on October 19,

9    2012, Dkt. No. 22, and this Court denied that motion on December 7, 2012, Dkt.

10   No. 37.  Consistent with the parties' scheduling stipulation and this Court's

11   subsequent scheduling order approving that stipulation on February 1, 2013, Dkt.

12   No. 48, the Countrywide Defendants filed and served (and the other Defendants

13   joined) a motion to dismiss on February 26, 2013.  Dkt. Nos. 51-53.  Plaintiff did

14   not file opposition papers, but instead filed its amended complaint on March 18,

15   2013.  Dkt. No. 55.  Like the original complaint filed by the FDIC in this case, the

16   amended complaint asserts claims for alleged violations of the 1933 Act and the

17   Texas Securities Act, as well as alleged successor liability.

18        ***Franklin Bank.***  The FDIC was appointed receiver of Franklin Bank on

19   November 7, 2008.  *Franklin Bank* Am. Compl. ¶ 148.  The FDIC filed a complaint

20   in Texas state court on November 4, 2011.  Dkt. No. 1.  The Countrywide

21   Defendants removed this case to the United States District Court for the Western

22   District of Texas on December 2, 2011, and the JPML issued a final order

23   transferring the case to the *Countrywide MBS MDL* on April 20, 2012.  Dkt. Nos. 1,

24

25   _____
     [12] Those Countrywide MBS are: (i) CWALT 2005-38 (tranche A-2) on July 29,
     2005; (ii) CWALT 2005-41 (tranche 2-A-1) on July 29, 2005; (iii) CWALT 2005-

26   51 (tranche 3-A-1) on September 30, 2005; (iv) CWALT 2005-58 (tranche A-3) on
     October 28, 2005; (v) CWALT 2005-62 (tranche 1-A-2) on October 31, 2005;

27   (vi) CWALT 2005-81 (tranche A-4) on December 29, 2005; (vii) CWALT 2005-76
     (tranche 1-A-2) on December 30, 2005; and (viii) CWALT 2006-OA2 (tranche A-7)

28   on April 28, 2006.  *See Guaranty Bank* Am. Compl. ¶ 29, Schedules 1–8.

29.  Plaintiff filed a motion to remand on December 29, 2011, Dkt. No. 20, and this Court denied that motion on August 3, 2012, Dkt. No. 66.  Consistent with the parties' scheduling stipulation and this Court's subsequent scheduling order approving that stipulation on September 6, 2012, Dkt. No. 72, the Countrywide Defendants filed and served (and the other Defendants joined) a motion to dismiss on October 4, 2012.  Dkt. Nos. 74-76.  Again, Plaintiff did not file opposition papers, but having received Countrywide's motion setting out dismissal arguments instead filed its amended complaint on October 25, 2012.  Dkt. No. 78.  Like the original complaint filed by the FDIC in this case, the amended complaint asserts claims for alleged violations of the 1933 Act and the Texas Securities Act on behalf of Franklin Bank with regard to six Countrywide MBS purchased by Franklin Bank between January 2006 and August 2007.  Dkt. No. 78.[13]

The Countrywide Defendants moved to dismiss the FDIC's amended complaint on December 18, 2012.  Dkt. No. 81.  As stipulated by the parties, that motion addressed only "jurisdiction, venue, and the applicable statutes of limitation and repose."  Dkt. No. 80.  On March 21, 2013, this Court issued an Order granting in part and denying in part the Countrywide Defendants' motion to dismiss the amended complaint.  Dkt. No. 90.  Specifically, the Court found that the FDIC's claims under Section 11 of the 1933 Act were time-barred for two of the six Countrywide MBS at issue.  *Id.*[14]  Consequently, the Court granted the Countrywide Defendants' motion to dismiss with regard to the FDIC's Section 11 claims as to those two Countrywide MBS, but denied the motion with regard to the remaining claims.  *Id.*

---

[13] Those Countrywide MBS are: (i) CWALT 2006-2CB (tranche A-13) on January 30, 2006; (ii) CWHL 2006-J1 (tranche 3-A-1) on January 30, 2006; (iii) CWHL 2007-3 (tranche A-1) on April 23, 2007; (iv) CWALT 2006-25CB (tranche A-1) on May 31, 2007; (v) CWHL 2007-5 (tranche A-51) on July 30, 2007; and (vi) CWHL 2007-17 (tranche 3-A-1) on August 30, 2007.  *See Franklin Bank* Am. Compl. ¶ 30, Schedules 1–6.

[14] Those Countrywide MBS are: CWALT 2006-2CB A-13 and CWHL 2006-J1 3-A-1.

1    ***Security Savings Bank.***  The FDIC was appointed receiver for Security

2    Savings Bank on February 27, 2009.  *Security Savings Bank* Am. Compl. ¶ 100.

3    The FDIC filed a complaint in Nevada state court on February 24, 2012.  Dkt. No. 1.

4    Banc of America Securities, LLC ("BAS") removed this case to the United States

5    District Court for the District of Nevada on March 30, 2012.  *Id.*  Plaintiff filed a

6    motion to remand on April 26, 2012, Dkt. No. 42, and the United States District

7    Court for the District of Nevada denied that motion on July 12, 2012, Dkt. Nos. 69,

8    70.  On August 3, 2012, the JPML issued a final order transferring the case to the

9    *Countrywide MBS MDL.*  Dkt. No. 75.  Consistent with the parties' scheduling

10   stipulation and this Court's subsequent scheduling order approving that stipulation

11   on September 5, 2012, Dkt. No. 83, BAS filed and served a motion to dismiss on

12   October 4, 2012.  Dkt. No. 88.  Plaintiff did not file opposition papers, but instead

13   filed its amended complaint on October 25, 2012.  Dkt. No. 94.  Like the original

14   complaint filed by the FDIC in this case, the amended complaint asserts claims for

15   alleged violations of the 1933 Act and the Nevada Securities Act on behalf of

16   Security Savings Bank with regard to five Countrywide MBS purchased by Security

17   Savings Bank between February 2006 and September 2006.  Dkt. No. 94.[15]

18       BAS, Barclays Capital, Inc., and Morgan Stanley & Co., LLC moved to

19   dismiss the FDIC's amended complaint on December 14, 2012.  Dkt. No. 97.  As

20   stipulated by the parties, that motion addressed only "jurisdiction, venue, and the

21   applicable statutes of limitation and repose."  Dkt. No. 96.  On March 21, 2013, this

22   Court issued an Order granting in part and denying in part the motion to dismiss the

23   amended complaint.  Dkt. No. 108.  Specifically, the Court found that the FDIC's

24   claims under Section 11 and Section 12(a)(2) of the 1933 Act were time-barred as to

25

26   _____
     [15] Those Countrywide MBS are: (i) CWALT 2005-19CB (tranche B-2) on
     February 22, 2006; (ii) CWALT 2005-74T1 (tranche B-2) on March 8, 2006;
27   (iii) CWALT 2006-29T1 (tranche B-1) on September 14, 2006; (iv) CWALT 2006-
     26CB (tranche B-2) on September 14, 2006; and (v) CWALT 2006-21CB (tranche
28   B-2) on September 14, 2006.

1  all Countrywide MBS at issue[16] except the Section 11 claim based on CWALT

2  2006-21CB.  *Id.*  Consequently, the Court granted the motion to dismiss with regard

3  to the FDIC's Section 11 and Section 12(a)(2) claims as to four of the Countrywide

4  MBS at issue, but denied the motion with regard to the remaining claims.[17]

5       The allegations in all three cases are virtually identical to the allegations in

6  complaints filed by the FDIC in other cases in the *Countrywide MBS MDL*,

7  including the complaints in *Strategic Capital Bank*, *United Western Bank*, and

8  *Security Savings Bank*.[18]  Like those other complaints, the amended complaints seek

9  to draw hindsight conclusions about the pooled loans from four categories of data:

10      •    *Owner-Occupancy Status.*  Plaintiff argues that "[a] significant number

11 of the properties" in the collateral pools of each securitization "that were stated to be

12 primary residences actually were not," alleging that support for this conclusion is

13 found in the following items that Plaintiff alleges it obtained from publicly available

14 information:  (1) "the borrower instructed local tax authorities to send the bills for

15 the taxes on the property to the borrower at an address other than the property

16 itself"; (2) "the owner could have but did not designate the property as his or her

17 homestead"; and (3) "[s]ix months after the closing of the mortgage, . . . [m]any

18 borrowers whose mortgage loans were secured by properties that were stated in the

19 loan tapes to be owner-occupied did not receive any bills at the address of the

20 mortgaged property but did receive their bills at another address or addresses."

21 *Guaranty Bank* Am. Compl. ¶¶ 73-78; *Franklin Bank* Am. Compl. ¶¶ 73-77;

22 *Security Savings Bank* Am. Compl. ¶¶ 69-73; *see also Guaranty Bank* Am. Compl.

23 _____
[16] Those Countrywide MBS are: (i) CWALT 2005-19CB; (ii) CWALT 2005-74T1;
24 (iii) CWALT 2006-29T1; and (iv) CWALT 2006-26CB.

[17] The Court's rulings had the effect of dismissing Morgan Stanley from the case.
25 The Court also dismissed defendant Barclays Capital, Inc. on jurisdictional grounds.
26 Dkt. No. 108.

[18] *See* Appendix A, which details the substantially identical factual allegations made
27 in the amended complaint in *Guaranty Bank*, and in the amended complaints in
   *Strategic Capital Bank*, *United Western Bank,* and *Security Savings Bank* (RJN
28 Exs. 1-3).

Schedules 1–8, Item 78; *Franklin Bank* Am. Compl. Schedules 1–6, Item 78; *Security Savings Bank* Am. Compl. Schedules 1–5, Item 74.  The amended complaints allege that, in view of this "evidence,"  Defendants "materially understated the risk of the certificates."  *Guaranty Bank* Am. Compl. ¶ 79; *Franklin Bank* Am. Compl. ¶ 79; *Security Savings Bank* Am. Compl. ¶ 75.  The prospectus supplements disclosed, however, that occupancy status was "[b]ased upon representations of the related borrowers at the time of origination."[19]

●   *Additional Liens, LTVs, and Appraisals.*  Plaintiff allegedly searched "land records" and supposedly uncovered "additional liens" on the mortgaged properties in the relevant securitizations.  *Guaranty Bank* Am. Compl. ¶¶ 51-52; *Franklin Bank* Am. Compl ¶¶ 51-52; *Security Savings Bank* Am. Compl. ¶¶ 47-48.  The amended complaints allege that the prospectus supplements misrepresented each offering's weighted average combined LTV by failing to account for those alleged additional liens that, according to Plaintiff, "increased the risk that th[e] owners would default in payment" of the mortgage loans.  *Guaranty Bank* Am. Compl. ¶ 52; *Franklin Bank* Am. Compl. ¶ 52; *Security Savings Bank* Am. Compl. ¶ 48; *see also Guaranty Bank* Am. Compl. Schedules 1–8, Item 55; *Franklin Bank* Am. Compl. Schedules 1–2, 6, Item 55; *Security Savings Bank* Am. Compl. Schedules 1–5, Item 51.  The prospectus supplements disclosed, however, that the loan originator's "underwriting guidelines do not prohibit or otherwise restrict a [borrower] from obtaining secondary financing from lenders other than [the loan originator], whether at origination of the mortgage loan or thereafter,"[20] and they defined LTVs as limited only to the subject mortgage loan, making clear that LTVs did not include additional liens.[21]  Plaintiff also allegedly used an "industry-standard

_____

[19] *See* Appendix D, which details the identical disclosures in the prospectus supplements for all of the Countrywide MBS offerings at issue in *Guaranty Bank*, *Franklin Bank*, and *Security Savings Bank*.

[20] *See id.*

[21] *See id.*

automated valuation model" designed by CoreLogic[22] "to determine the true market value of a certain property as of a specified date."  *Guaranty Bank* Am. Compl. ¶ 42; *Franklin Bank* Am. Compl. ¶ 42; *Security Savings Bank* Am. Compl. ¶ 38. Plaintiff alleges that the AVM output showed that appraisals for some of the properties were overstated, and that the LTVs disclosed in the prospectus supplements were correspondingly understated.  *Guaranty Bank* Am. Compl. ¶ 44; *Franklin Bank* Am. Compl. ¶ 52; *Security Savings Bank* Am. Compl. ¶ 54; *see also Guaranty Bank* Am. Compl. Schedules 1–8, Item 49; *Franklin Bank* Am. Compl. Schedules 1–6, Item 49; *Security Savings Bank* Am. Compl. Schedules 1–5, Item 45.

• *Underwriting Standards.*  Plaintiff argues that loan originators disregarded their underwriting standards based on what it characterizes as "the rising incidence of early payment defaults (or EPDS)," defined as the percentage of loans "that became 60 or more days delinquent within six months after they were made."  *Guaranty Bank* Am. Compl. ¶ 85; *Franklin Bank* Am. Compl. ¶ 85; *Security Savings Bank* Am. Compl. ¶ 81.  The amended complaints allege that EPD rates for all loans originated by Countrywide Home Loans, Inc. ("CHL") increased in the first quarter of 2006, but these complaints also admit that the EPD rate for any given Certificate was never higher than 1.4%.  *Guaranty Bank* Am. Compl. ¶ 85; *Franklin Bank* Am. Compl. ¶ 85; *Security Savings Bank* Am. Compl. ¶ 81; *see also Guaranty Bank* Am. Compl. Schedules 1, 3–5, 8, Item 87; *Franklin Bank* Am. Compl. Schedules 1, 4–5, Item 87; *Security Savings Bank* Am. Compl. Schedules 1, 3–4, Item 83.  The amended complaints also include delinquency data for the Certificates years after the fact concerning borrowers who "were ever 90 or more days delinquent in their payments" or "were 30 or more days delinquent" on a given

---

[22] Though CoreLogic is not mentioned by name in the amended complaints, Plaintiff has acknowledged in numerous contexts that CoreLogic is its AVM vendor.  *See, e.g.*, Tr. of Hearing on Motions at 76, *FDIC as Receiver for Strategic Capital Bank v. Countrywide Fin. Corp.*, No. 12-cv-4354 (C.D. Cal. Nov. 9, 2012) (RJN Ex. 37).

date.  *Guaranty Bank* Am. Compl. ¶¶ 88-89; *Franklin Bank* Am. Compl. ¶ 88-89;

*Security Savings Bank* Am. Compl. ¶¶ 84-85; *see also Guaranty Bank* Am. Compl.

Schedules 1–8, Items 88-89; *Franklin Bank* Am. Compl. Schedules 1–6, Items 88-

89; *Security Savings Bank* Am. Compl. Schedules 1–5, Items 84-85.  Lastly,

Plaintiff makes allegations based on complaints filed by other plaintiffs, a report by

the Financial Crisis Inquiry Commission, and settlements with state attorneys

general.  *Guaranty Bank* Am. Compl. ¶¶ 90-97; *Franklin Bank* Am. Compl. ¶¶ 90-

97; *Security Savings Bank* Am. Compl. ¶¶ 86-93.

• *Credit ratings.*  Plaintiff alleges that, due to the foregoing, the

Certificates were riskier than they were represented to be and that their credit ratings

were overstated as a result.  *See Guaranty Bank* Am. Compl. ¶¶ 98-103; *Franklin

Bank* Am. Compl. ¶¶ 98-103; *Security Savings Bank* Am. Compl. ¶¶ 94-99.

## ARGUMENT

## I.   THE 1933 ACT CLAIMS IN *GUARANTY BANK* SHOULD BE DISMISSED AS TIME-BARRED.

Plaintiff's 1933 Act claims in *Guaranty Bank* are subject to a three-year

statute of repose and a one-year statute of limitations.  15 U.S.C. § 77m.  Section 13

of the 1933 Act "includes a three-year period of repose that begins to run on . . . the

date that the security was 'bona fide offered to the public' (Section 11 claims)."

*Putnam Bank v. Countrywide Fin. Corp.*, 860 F. Supp. 2d 1062, 1067 (C.D. Cal.

2012) (citing 15 U.S.C. § 77m).  Section 13 of the 1933 Act also includes a one-year

limitations period that begins to run "within one year after the discovery of the

untrue statement or the omission, or after such discovery should have been made by

the exercise of reasonable diligence."  15 U.S.C. § 77m.  Plaintiff's 1933 Act claims

are time-barred because both the repose and limitations periods had expired before

the FDIC was appointed receiver for Guaranty Bank on August 21, 2009 (*i.e.*,

before the FDIC extender statute potentially could take effect).  Further, because

1   there is no basis for *American Pipe* tolling, Plaintiff's 1933 Act claims must be

2   dismissed.

### A.   The 1933 Act's Three-Year Statute of Repose And One-Year Statute Of Limitations Have Expired.

#### 1.   As In *United Western Bank*, The 1933 Act's Three-Year Statute Of Repose Has Expired.

6   Plaintiff does not and cannot allege that its claims are timely under the 1933

7   Act's three-year statute of repose.  The Certificates at issue were offered to the

8   public and purchased by Guaranty Bank on or before April 28, 2006—*i.e.*, more

9   than three years before the FDIC's appointment as receiver for Guaranty.  *See*

10  *Guaranty Bank* Am. Compl. ¶ 29, Schedules 1–8.  Plaintiff's 1933 Act claims are

11  therefore barred by the statute of repose.  *United Western Bank I*, slip op. at 5

12  (dismissing the 1933 Act claims asserted in a complaint filed "more than three years

13  after each of the Certificates in this case was bona fide offered to the public");

14  *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1178 (C.D. Cal.

15  2011) (same); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802

16  F. Supp. 2d 1125, 1130 (C.D. Cal. 2011) (same).

#### 2.   As In *Strategic Capital Bank*, The 1933 Act's One-Year Statute Of Limitations Has Expired.

19  Plaintiff alleges that its claims are timely since "[t]he statutes of limitations

20  applicable to the claims asserted in this Complaint had not expired as of August 21,

21  2009 [*i.e.*, the date that Plaintiff became receiver for Guaranty Bank] because a

22  reasonably diligent plaintiff would not have discovered until later than August 21,

23  2008" the Countrywide Defendants' alleged misrepresentations.  *Guaranty Bank*

24  Am. Compl. ¶ 151.[23]  This Court recently rejected a virtually identical assertion in

25  *Strategic Capital Bank* and *Colonial Bank*.

26  _____

27  [23] Plaintiff also alleges that, "[u]nder 12 U.S.C. § 1821(d)(14), the statutes of limitations on all of Guaranty's claims asserted in this Complaint that had not expired as of August 21, 2009, are extended to no less than three years from that

28  date." *Guaranty Bank* Am. Compl. ¶ 150.  Where, as here, the FDIC's 1933 Act claims are time-barred (due to the running of the statute of repose and/or statute of

a.   **A Reasonably Diligent Investor Should Have Discovered The Alleged Misrepresentations Before August 21, 2008.**

This Court held in *Strategic Capital Bank*: "By May 22, 2008, any purchaser of Countrywide RMBS was fully aware of severe problems in the underwriting and appraisals. This Court had already ruled that allegations that Countrywide abandoned its underwriting standards were plausible under Rule 12(b)(6). Holders of RMBS had begun to file complaints." *Strategic Capital Bank*, 2012 WL 5900973, at *6; *accord Colonial Bank*, 2013 WL 1598680, at *1 ("[A] reasonably diligent plaintiff had enough information about false statements in the Offering Documents of [Countrywide] securities to file a well-pled complaint before August 14, 2008."). Because this was true as of May 22, 2008, it was certainly true *months later* as of August 21, 2008.[24] By then, reasonably diligent investors had filed no fewer than *thirteen* complaints[25] making the same allegations that Plaintiff makes

limitations) before the date of the FDIC's appointment as receiver, the extender statute is inapplicable because it cannot revive such stale claims. *See Strategic Capital Bank*, 2012 WL 5900973, at *2 ("[I]f SCB discovered or should have discovered the misstatements before May 22, 2008, then the claims here were not live when the FDIC was appointed receiver, and are untimely now."). Here, the extender statute is inapplicable because (1) the statute of repose applicable to Plaintiff's 1933 Act claims on each of the Certificates at issue had expired before the FDIC was appointed *Guaranty Bank*'s receiver, *see supra* at 13, and (2) the statute of limitations also had expired because Guaranty Bank reasonably should have discovered its 1933 Act claims before August 21, 2008 (*i.e.*, one year before the FDIC was appointed receiver). *See infra* at 13-23.

[24] Indeed, as this Court has explained, a reasonable investor should have discovered the alleged misrepresentations in Countrywide MBS offering documents by no later than May 14, 2008. *Security Savings Bank*, 2013 WL 1191785, at *4.

[25] *See Pappas v. Countrywide Fin. Corp.*, No. 07-cv-05295-MRP (C.D. Cal. filed Aug. 14, 2007) (RJN Ex. 4); *Norfolk County Ret. Sys. v. Countrywide Fin. Corp.*, No. 07-cv-05727-MRP (C.D. Cal. filed Aug. 31, 2007) (RJN Ex. 5); *McBride v. Countrywide Fin. Corp.*, No. 07-cv-06083-MRP (C.D. Cal. filed Sept. 19, 2007) (RJN Ex. 6); *Saratoga Advantage Trust v. Countrywide Fin. Corp.*, No. 07-cv-06635-MRP (C.D. Cal. filed Oct. 12, 2007) (RJN Ex. 7); *Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.*, No. 07-cv-07097-MRP (C.D. Cal. filed Oct. 30, 2007) (RJN Ex. 8); *Brahn v. Countrywide Fin. Corp.*, No. 07-cv-07259-MRP (C.D. Cal. filed Nov. 5, 2007) (RJN Ex. 9); *Luther v. Countrywide Home Loans Servicing LP*, No. BC380698 (Cal. Super. Ct. filed Nov. 14, 2007) (RJN Ex. 10); *Ark. Teacher Ret. Sys. v. Mozilo*, No. 07-cv-06923-MRP (C.D. Cal. filed Nov. 24, 2007) (RJN Ex. 11); *New York City Emps.' Ret. Sys. v. Countrywide Fin. Corp.*, No. 08-cv-00492-ODW (C.D. Cal. filed Jan. 25, 2008) (RJN Ex. 12); *In re Countrywide Fin. Corp. Derivative Litig.*, No. 07-cv-06923-MRP (C.D. Cal. filed

1   here about Countrywide's alleged loan origination practices.  *Strategic Capital*

2   *Bank*, 2012 WL 5900973, at *3-7.[26]  This Court focused on three of those

3   complaints in *Strategic Capital Bank*—the Original *Luther* Complaint, the

4   Derivative Complaint, and the Securities Complaint[27]—all of which include

5   allegations that are "found, at times verbatim, in the FDIC's complaint" here.  *Id.*

6   at *5.

7       •  **The Original *Luther* Complaint (filed on November 14, 2007).**  The

8   Original *Luther* Complaint, filed by a Countrywide MBS investor, asserted claims

9   against CSC and CWALT for violations of Sections 11, 12(a)(2) and 15 of the 1933

10   Act, alleging that the offering materials for many of the offerings at issue here

11   (among others) "contained misstatements as to loan-to-value ratios, appraisals of

12   properties underlying the mortgages, and deviations from stated underwriting

13   standards."  *Strategic Capital Bank*, 2012 WL 5900973, at *3.  "Although this Court

14   has often criticized the *Luther* class action, it is clear that the named plaintiff had no

15   difficulty charging that CWALT's misstatements violated Section 11 of the

16   Securities Act."  *Id.*; *accord Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F.

17   Supp. 2d 1157, 1165 (C.D. Cal. 2010) ("*Maine State I*") ("The filing of the *Luther*

18   complaint on November 14, 2007, which contained claims with respect to the

19

20   Feb. 15, 2008) (RJN Ex. 13); *Bassman v. Syron*, No. 08-cv-02423-BSJ (S.D.N.Y. filed Mar. 10, 2008) (RJN Ex. 14); *In re Countrywide Fin. Corp. Sec. Litig.*, No. 07-

21   cv-05295-MRP (C.D. Cal. filed Apr. 11, 2008) ("*NY Funds*") (RJN Ex. 15); *Wash. State Plumbing & Pipefitting Pension Trust v. Countrywide Fin. Corp.*,

22   No. BC392571 (Cal. Super. Ct. filed June 12, 2008) (RJN Ex. 16).

23   [26] *See* Appendix B (comparing the *Guaranty Bank* amended complaint's allegations with allegations in complaints filed before August 21, 2008.  In addition to those

24   complaints, publicly available press reports also disclosed, before August 21, 2008, information that forms the basis of Plaintiff's amended complaint.  *See* Appendix C

25   (comparing the *Guaranty Bank* amended complaint's allegations with information in press reports published before August 21, 2008).

26   [27] *Luther v. Countrywide Home Loans Servicing LP*, No. BC380698 (Cal. Super. Ct. filed Nov. 14, 2007) (the "Original *Luther* Complaint"); *In re Countrywide Fin.*

27   *Corp. Derivative Litig.*, No. 07-cv-06923 (C.D. Cal. filed Feb. 15, 2008) (the "Derivative Complaint"); *In re Countrywide Fin. Corp. Sec. Litig.*, No. 07-cv-05295

28   (C.D. Cal. filed Apr. 11, 2008) (the "Securities Complaint").

1    CWALT Offerings only, establishes that Plaintiffs discovered the basis of their

2    CWALT claims before November 14, 2007.").  The Original *Luther* Complaint

3    "includes detailed allegations about the offering materials" for Plaintiff's

4    Certificates.  *Strategic Capital Bank*, 2012 WL 5900973, at *3; Original *Luther*

5    Compl. ¶¶ 14, 45-58 (asserting claims relating to numerous CWALT offerings,

6    including the CWALT 2005-38, CWALT 2005-41, CWALT 2005-51, CWALT

7    2005-58, CWALT 2005-62, CWALT 2005-76, and CWALT 2005-81 offerings at

8    issue here) (RJN Ex. 10).[28]  Accordingly, "*Luther* does show that plaintiffs who had

9    bought the same type of securities were well-aware that the alleged abandonment of

10   underwriting standards and other Countrywide corporate behavior undermined

11   assertions made in filings tied to RMBS."  *Strategic Capital Bank*, 2012 WL

12   5900973, at *7.[29]

13       •    **The Derivative Complaint (filed on February 15, 2008).**  The

14   Derivative Complaint that was filed by CFC stockholders on February 15, 2008

15   (asserting fraud claims requiring scienter) "included numerous allegations, from

16   first-hand participants, that Countrywide had deviated from stated underwriting

17   standards in order to make as many loans as possible" by, among other things,

18   "extending wholesale 'exceptions' to the normal standards."  *Strategic Capital

19   Bank*, 2012 WL 5900973, at *5.  The same complaint included allegations that

20   CFC's officers and directors "had created 'woefully inadequate controls over the

21   Company's policies and practices with respect to underwriting and credit risk

22

---

23   [28] The June 2008 *Washington State* complaint includes the same allegations relating
     to the CWALT 2006-OA2 offering at issue in *Guaranty Bank*.  *Wash. State
24   Plumbing & Pipefitting Pension Trust v. Countrywide Fin. Corp.*, No. BC392571,
     at ¶ 37 (Cal. Super. Ct. filed June 12, 2008) (RJN Ex. 16).  As with the Original
25   *Luther* Complaint filed in November 2007, "[t]he filing of the *Washington State*
     complaint on June 12, 2008, which contained essentially the same claims . . . ,
26   establishes Plaintiffs discovered the basis of all their claims before June 12, 2008."
     *Maine State I*, 722 F. Supp. 2d at 1165.

27   [29] Plaintiff asserts that Guaranty Bank was part of the *Luther* class: "As a purchaser
     of the certificates, Guaranty was, and Plaintiff as Receiver for Guaranty is, a
28   member of the proposed class in *Luther*."  *Guaranty Bank* Am. Compl. ¶ 158.

exposure.'" *Id.* at *4 (quoting Derivative Compl. ¶ 492(c)).  In addition, "[t]he Derivative Complaint included similar allegations about falsified and inflated appraisal values, including citations to witnesses with inside knowledge of the appraisal process." *Id.* at *5.  In short, the Derivative Complaint "painted a compelling portrait of a dramatic loosening of underwriting standards in Countrywide branch offices across the United States." *Id.* (alteration and quotation omitted).  On May 14, 2008, "this Court held that the pleading supported 'a strong inference of a Company-wide culture that, at every level, emphasized increased loan origination volume in derogation of underwriting standards.'" *Id.* at *4 (quoting *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1058 (C.D. Cal. 2008)).

- **The Securities Complaint (filed on April 11, 2008).**[30]  The Securities Complaint, filed by investors in CFC equity and debt securities, also alleged fraud claims.  Like the Derivative Complaint, it asserted that investors "were harmed by Countrywide's abandonment of its loan origination and underwriting standards, and that Countrywide inflated appraisal values." *Strategic Capital Bank*, 2012 WL 5900973, at *4 (citing Securities Compl. ¶¶ 116, 126-207).  As this Court explained, "[t]he complaint included first-hand witness accounts of deviations from underwriting standards and of a CFC cultural shift towards riskier mortgages and inflated appraisals." *Id.*  Indeed, "[m]ore eyewitnesses revealed loosened

---

[30] The Securities Complaint was a consolidated amended class action complaint that consolidated the following six putative securities class actions filed between August 2007 and November 2007: *Pappas v. Countrywide Fin. Corp.*, No. 07-cv-05295-MRP (C.D. Cal. filed Aug. 14, 2007) (RJN Ex. 4); *Norfolk County Ret. Sys. v. Countrywide Fin. Corp.*, No. 07-cv-05727-MRP (C.D. Cal. filed Aug. 31, 2007) (RJN Ex. 5); *McBride v. Countrywide Fin. Corp.*, No. 07-cv-06083-MRP (C.D. Cal. filed Sept. 19, 2007) (RJN Ex. 6); *Saratoga Advantage Trust v. Countrywide Fin. Corp.*, No. 07-cv-06635-MRP (C.D. Cal. filed Oct. 12, 2007) (RJN Ex. 7); *Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.*, No. 07-cv-07097-MRP (C.D. Cal. filed Oct. 30, 2007) (RJN Ex. 8); and *Brahn v. Countrywide Fin. Corp.*, No. 07-cv-07259-MRP (C.D. Cal. filed Nov. 5, 2007) (RJN Ex. 9). Each of these six complaints included substantially similar factual allegations about Countrywide's loan origination practices.

1  underwriting standards, reliance on second liens on borrower's property, and the

2  extent to which Countrywide 'routinely approved' exceptions to their normal

3  underwriting standards." *Id.* at *5 (citing Securities Compl. ¶¶ 5, 104, 108, 126).

4  The Securities Complaint "convincingly alleged that '[f]rom mid-2003 onward,

5  Countrywide continually loosened its underwriting guidelines to the point of nearly

6  abandoning them by 2006.'" *Id.* (quoting *In re Countrywide Fin. Corp. Sec. Litig.,*

7  588 F. Supp. 2d 1132, 1145 (C.D. Cal. 2008)).  "That complaint also survived a

8  motion to dismiss." *Id.* at *4.

9       In light of the filing of these three complaints (among others) and the public

10  media coverage concerning Countrywide's alleged loan origination practices, this

11  Court held in *Strategic Capital Bank* that a reasonable investor should have

12  discovered its claims more than one year before the FDIC's appointment as

13  Strategic Capital Bank's receiver on May 22, 2009.  2012 WL 5900973, at *15

14  ("The FDIC's claim is time-barred.  Public media sources, complaints and judicial

15  decisions gave SCB sufficient information to survive a motion to dismiss before

16  May 22, 2008.").  This holding applies with even greater force here given that the

17  FDIC was appointed Guaranty Bank's receiver *almost three months later* on

18  August 21, 2009.

19       Indeed, this Court has already found that the Original *Luther* Complaint, the

20  Derivative Complaint, and the Securities Complaint all alleged the same

21  misrepresentations alleged by Plaintiff here well before August 21, 2008.  Like the

22  amended complaint in *Strategic Capital Bank*, the amended complaint in *Guaranty*

23  *Bank* asserts misrepresentations allegedly made in the offering documents as to

24  (1) LTVs and appraisals and (2) underwriting guidelines.  *See* Appendix A (showing

25  the virtually identical allegations in *Strategic Capital Bank* and *Guaranty Bank*).

26  With respect to LTVs and appraisals, the Original *Luther* Complaint "alleged that

27  LTV ratios listed in the Offering Documents were false," the Derivative Complaint

28  and the Securities Complaint alleged that Countrywide did not disclose additional

1    liens on properties, and "[a]ll three complaints described in excruciating detail

2    involving statements by eyewitnesses the encouragement from CFC to inflate

3    appraisal values." *Id.* at *5.  With respect to underwriting guidelines, the Original

4    *Luther* Complaint, the Derivative Complaint, and the Securities Complaint all

5    alleged that "loans originated by Countrywide were issued according to standards

6    inconsistent with those in the Offering Documents" because "Countrywide was

7    disregarding the stated guidelines, making extensive, wholesale exceptions, and

8    extending loans the borrowers could not repay." *Id.* at *6.  In short, Plaintiff's 1933

9    Act claims in *Guaranty Bank* are based on alleged misrepresentations discovered

10   before August 21, 2008, and consequently, those claims are time-barred.[31]

11         **b.    This Court Rejected Plaintiff's Virtually Identical**
12                 **Statute Of Limitations Allegations In *Strategic Capital***
                   ***Bank*.**

13         Just as it did in *Strategic Capital Bank*, the FDIC asserts that its 1933 Act

14   claims are timely because allegedly "there was no specific information about the

15   actual loans backing the certificates [Guaranty Bank] purchased" until "early 2010."

16   *Strategic Capital Bank*, 2012 WL 5900973, at *6; *Guaranty Bank* Am. Compl.

17   ¶ 151.  But Plaintiff's argument ignores this Court's prior rulings, in the context of

18   which this motion to dismiss must be decided.  More specifically, this Court has

19   held that a Countrywide MBS investor could have survived a motion to dismiss in

20   May 2008 by alleging "universal deviations from underwriting standards" without

21   needing to include "granular loan-level data" in the complaint.  *Strategic Capital*

22   *Bank*, 2012 WL 5900973, at *6.  And, in *Strategic Capital Bank*, the FDIC made the

23   same arguments that it makes here, which this Court found "flawed" and rejected:

24   _____
     [31] Mindful of this Court's decision in *United Western Bank II*, the Countrywide

25   Defendants respectfully submit in order to preserve the record that Plaintiff's claims
     in *Guaranty Bank* are time-barred for the additional reason that, unlike the

26   allegations in other *Countrywide MBS MDL* actions, the allegations in the amended
     complaint here are based exclusively on statistical analyses of data that were

27   publicly available before August 21, 2008, and indeed available to the plaintiffs
     bringing the Original *Luther* Complaint, the Derivative Complaint, and the

28   Securities Complaint.  *See infra* at 33-34.

1    This Court has rejected the position that a complaint must include

2    granular loan-level data before it can pass a motion to dismiss. There

3    is no "growing body of law" to the contrary. A complaint is sufficient

4    under Rule 12(b)(6) when the plaintiff alleges that the misstatements

5    and omissions were made with respect to all of the loans, and all of

6    the loans were issued by deviating from the underwriting guidelines.

7    The Amended Complaint, like many other complaints, alleges

8    universal deviations from underwriting standards, which also applied

9    to the specific loan pools backing the securities SCB purchased. A

10   complaint with general allegations that Countrywide was deviating

11   from its underwriting standards would have been sufficient in May

12   2008 to survive a motion to dismiss.

13  *Id.* at *6 (citations and internal quotation marks omitted). The same is even more

14  true as of August 21, 2008, for the reasons described above, *see supra* at 14-19, and

15  this Court should again reject Plaintiff's allegations.

16         *First*, Plaintiff asserts that Guaranty Bank could not have discovered before

17  August 2008 any alleged misrepresentations "about the 17,575 *specific mortgage*

18  *loans* in the collateral pools of the securitizations involved in this action," as

19  opposed to any alleged misrepresentations "about residential mortgage loans or any

20  type of residential mortgage loan (*e.g.*, prime, Alt-A, subprime, etc.) in general."

21  *Guaranty Bank* Am. Compl. ¶ 151 (emphasis added). But this could be said of

22  every Countrywide MBS plaintiff because every Countrywide MBS offering is

23  backed by a unique set of "specific loans." *Maine State I*, 722 F. Supp. 2d at 1164.

24  For this reason, this Court has dismissed as "frivolous" allegations that "public press

25  reports and prior complaints" did not trigger the applicable statute of limitations

26  "with respect to the *specific Certificates* purchased by [Plaintiff]." *Allstate*, 824

27  F. Supp. 2d at 1179 (emphasis added); *accord Strategic Capital Bank*, 2012 WL

28

1   5900973, at *6.[32]  Plaintiff's proposed approach would "render the statute of

2   limitations meaningless" because "[a] statute which does not begin to run until every

3   possible phrasing or permutation of the defendant's wrongdoing has been publicly

4   reported would never run." *Stichting*, 802 F. Supp. 2d at 1137.

5        *Second*, Plaintiff alleges that Guaranty Bank did not have access before

6   August 2008 to the loan files and servicing records for the specific mortgage loans

7   backing the Certificates.  *Guaranty Bank* Am. Compl. ¶ 151.  But this allegation

8   reflects a fundamental misunderstanding of how statutes of limitations work.  As

9   this Court has held, "the statute begins to run when a plaintiff has (or a reasonably

10  diligent plaintiff should have) information and evidence sufficient to survive a

11  motion to dismiss, not when a plaintiff has every conceivable fact that it will

12  ultimately use to prove its case." *Stichting*, 802 F. Supp. 2d at 1137-38 (internal

13  quotation marks omitted); *accord Strategic Capital Bank*, 2012 WL 5900973, at *6.

14  As such, the alleged lack of access to files and records did not prevent the FDIC

15  from bringing suit here (or in its eight other cases involving Countrywide MBS), nor

16  did it prevent investors in the 32 other cases centralized in the *Countrywide MBS*

17  *MDL* from bringing suits over which this Court has presided.

18       *Third*, Plaintiff alleges that Guaranty Bank supposedly did not have access

19  before August 2008 to "data about those specific loans that show that the statements

20  that defendants made about those specific loans were untrue or misleading."

21  *Guaranty Bank* Am. Compl. ¶ 151.  But this is nothing more than a legal conclusion.

22  It does not identify the data to which Guaranty Bank supposedly needed access or

23  how those data were not publicly available and, therefore, as a matter of law does

24  not show Plaintiff's compliance with the statute of limitations.  *See Iqbal*, 556 U.S.

25  at 678-79; *Twombly*, 550 U.S. at 564-65.  Moreover, this allegation is belied by the

26  _____

27  [32] *Accord Freidus v. ING Groep N.V.*, 736 F. Supp. 2d 816, 828-29 (S.D.N.Y. 2010) (dismissing 1933 Act claims as time-barred and rejecting the argument that public disclosures "failed to notify investors of the granular details—like the types of

28  mortgages underlying the assets—alleged to have been omitted").

fact that before August 21, 2008, numerous other plaintiffs (including the *Luther* plaintiffs) had filed complaints alleging substantially identical misrepresentations about LTVs, appraisals, and Countrywide's underwriting guidelines without the benefit of the FDIC's analysis.  *See* Appendix B.  Indeed, this Court already has rejected the argument that an MBS complaint was timely simply because it was based on the same sort of analysis that the FDIC allegedly conducted here, holding that "[a] complaint with general allegations that Countrywide was deviating from its underwriting standards would have been sufficient" and that such an analysis "is therefore not essential to survive a motion to dismiss" and does not delay the statute of limitations.  *Strategic Capital Bank*, 2012 WL 5900973, at *6 & n.14 (internal quotation marks omitted).

*Fourth*, Plaintiff alleges that rating agencies did not withdraw or downgrade the ratings of the Countrywide MBS at issue prior to August 21, 2008.  *Guaranty Bank* Am. Compl. ¶¶ 153-56.  But "[t]his reliance on credit ratings is misplaced for reasonable, sophisticated investors like the plaintiff, who purchased $[1.5 billion] total worth of mortgage-backed securities."  *Strategic Capital Bank*, 2012 WL 5900973, at *7; *Guaranty Bank* Am. Compl. ¶ 1.  As this Court has held, ratings downgrades do not determine when the 1933 Act's statute of limitations is triggered for many reasons:

> [*First*,] [n]othing in Section 13 or the securities laws suggest that the statute does not run until ratings downgrade.  *Second*, the rule offered by the FDIC absolves investors from monitoring the performance and truthfulness of the representations in their investments, and delegates all responsibility for assessing representations to the rating agencies. This result is also unjustified by policy concerns, given the poor performance by the rating agencies in the run-up to the financial crisis.  *Third*, such a rule would transform this suit from a claim about misrepresentations in the Offering Documents into a suit over the

downgrade itself. *Fourth*, many Countrywide investors brought lawsuits based on misrepresentations before any downgrade in their securities, because their injury accrued at the same time the alleged misrepresentations came to light, not at the time the risk actually materialized in the form of defaults or lower market values. *Fifth*, this Court has specifically rejected the reliance on ratings downgrades. *Finally*, though the ratings agencies did not downgrade the specific securities purchased by SCB before May 2008, the agencies began placing CWALT issuances on warning and other negative outlook lists before the relevant date. Indeed, the *Luther* complaint relies on the fact that "By the summer of 2007, [as] the amount of uncollectible mortgage loans underlying the Certificates began to be revealed to the public . . . the Rating Agencies began to put negative watch labels on many Certificate classes, ultimately downgrading many."

*Id.* (ellipsis in original; emphasis added; citations and internal quotation marks omitted). This Court's rulings in *Strategic Capital Bank* apply equally in this case.

In sum, before August 21, 2008, Guaranty Bank knew or reasonably should have known that the offering materials for the MBS contained what Plaintiff now attacks as alleged misrepresentations. As this Court held in *Strategic Capital Bank*: "The media sources, complaints and judgments created a roadmap for holders of RMBS to sue Countrywide for its inflated appraisals, abandonment of underwriting standards and false LTVs, in contravention to representations in the Offering Documents. The FDIC cannot rely upon the relative lack of information specific to the securities [Guaranty Bank] actually purchased, and cannot hide behind the failure of the credit rating agencies to downgrade those certificates." *Id.* at *8. Consequently, Plaintiff's claims in *Guaranty Bank* were time-barred when the FDIC was appointed receiver.

**B.    _American Pipe_ Tolling Does Not Apply.**

Absent tolling, _Guaranty Bank_ must be dismissed with prejudice.  Plaintiff alleges that "[t]he pendency of _Luther_ has tolled the running of the statutes of limitations on the claims in this Complaint," because "[s]even of the securitizations from which Guaranty purchased certificates . . . were included in the original Class Action Complaint filed in _Luther_" and "[o]ne of the securitizations . . . was included in the original Class Action Complaint filed in _Washington State_."  _Guaranty Bank_ Am. Compl. ¶¶ 158-60.  In _Strategic Capital Bank, Security Savings Bank_, _Colonial Bank_, and _United Western Bank I_, this Court considered and rejected the same arguments.  The Court held that _American Pipe_ did not toll the statute of limitations for the FDIC's 1933 Act claims because: (1) _Luther_ was not filed in federal court under Federal Rule of Civil Procedure 23, but rather in state court; and (2) in any event, the _Luther_ named plaintiffs did not have the standing necessary to trigger _American Pipe_ tolling.  _See Strategic Capital Bank_, 2012 WL 5900973, at *9-14; _Security Savings Bank_, 2013 WL 1191785, at *6-12; _Colonial Bank_, 2013 WL 1598680, at *2; _United Western Bank I_, slip op. at 5.  The same is true here.[33]

---

[33] In addition, _American Pipe_ does not toll the statute of limitations for the FDIC's 1933 Act claims because the _Guaranty Bank_ amended complaint does not allege facts sufficient to invoke _American Pipe_ tolling.  A plaintiff bears the burden of pleading "specific" facts in its complaint showing that its claims are subject to _American Pipe_ tolling.  _See Maine State I_, 722 F. Supp. 2d at 1162; _accord Hinton v. Pac. Enters._, 5 F.3d 391, 395 (9th Cir. 1993) ("The burden of alleging facts which would give rise to tolling falls upon the plaintiff.").  To plead tolling adequately, a complaint "must include the following information for each security for which it asserts a §§ 11 or 12(a)(2) claim: the date that the prospectus issued; the date that Plaintiff purchased the security; the tranche of the security that Plaintiff purchased; from whom or on what market Plaintiff purchased the security; the grounds for asserting that a _Luther_ plaintiff also purchased the security; the tranche of the security that the _Luther_ plaintiff purchased; and the date on which that _Luther_ plaintiff joined the _Luther_ case."  _Stichting_, 802 F. Supp. 2d at 1131; _accord Maine State I_, 722 F. Supp. 2d at 1167 (dismissing claims where the plaintiffs failed "to explain . . . on what basis Plaintiffs believe their claims have been tolled, and the effect of this tolling on individual claims and individual defendants.").  Here, Plaintiff does not even attempt to make the necessary allegations, failing to specify whether (or when) the _Luther_ named plaintiffs purchased in the same Countrywide MBS tranches at issue in this case.

### 1. *Luther* Did Not Trigger *American Pipe* Tolling Because It Was Filed In State Court.

*Luther* did not trigger *American Pipe* tolling because it was not filed in federal court under Federal Rule of Civil Procedure 23, but rather in state court.  In *Strategic Capital Bank*, *Security Savings Bank*, and *Colonial Bank*, this Court "reject[ed] *American Pipe* tolling for state court class actions like *Luther*."  *Strategic Capital Bank*, 2012 WL 5900973, at *8 n.19; *accord Security Savings Bank*, 2013 WL 1191785, at *8 (reaffirming that "a class action filed in state court does not toll the statute of limitations for subsequent individual federal actions even when both are based on the same federal substantive law"); *Colonial Bank*, 2013 WL 1598680, at *2 ("[S]tate court class actions cannot toll the statute of limitations for a subsequent individual federal claim, because a class action in state court need not conform to the requirements of Federal Rule 23, or supply the special information mandated in a securities action in federal court.").  This Court held that "*American Pipe* tolling cannot apply to a class action filed in state court, even if the claims in the state class action are federal," because *American Pipe* tolling applies only to class actions filed in federal court under Federal Rule of Civil Procedure 23.  *Strategic Capital Bank*, 2012 WL 5900973, at *13; *Security Savings Bank*, 2013 WL 1191785, at *8 ("*American Pipe* tolling only extends statutes of limitation when the class action was filed in federal court."); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) ("The rule of *American Pipe* . . . allows tolling *within the federal court system* in federal question class actions.") (emphasis added).[34]  Indeed, *American Pipe* tolling was adopted by the *federal courts* as "necessary to insure effectuation of the purposes of litigative efficiency and

---

[34] *Accord Am. Pipe*, 414 U.S. at 554 (announcing a tolling rule "consistent with *federal class action* procedure") (emphasis added); *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1144 (5th Cir. 1997) ("*American Pipe* . . . involved the tolling effect of putative *federal class actions*.") (emphasis added); *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 465 F. Supp. 2d 687, 719 (S.D. Tex. 2006) ("In *American Pipe* and in *Crown* the tolling doctrine was applied where *federal court class actions* were brought under federal statutes.") (emphasis added).

economy that the Rule [*i.e.*, Federal Rule of Civil Procedure 23] in its present form was designed to serve." *Am. Pipe*, 414 U.S. at 555-56.[35]  Moreover, policy considerations also counsel strongly against applying *American Pipe* tolling to state class actions:

> The federal government simply has no interest, except perhaps out of comity, in furthering the efficiency and economy of the class action procedures of another jurisdiction.  Extending *American Pipe* could burden the federal courts with a flood of subsequent filings once a class action in a state forum is dismissed, as forum-shopping plaintiffs from across the country rush into the federal courts to take advantage of its cross-jurisdictional tolling rule.  If the federal government were to allow cross-jurisdictional tolling, it would render the limitations period effectively dependent on the resolution of claims in other jurisdictions, with the length of the limitations period varying depending on the efficiency (or inefficiency) of courts in those jurisdictions.

*Strategic Capital Bank*, 2012 WL 5900973, at *14 (alterations, citations, and internal quotation marks omitted*); accord Security Savings Bank*, 2013 WL 1191785, at *10.

For all of these reasons, *American Pipe* tolling simply does not apply to *Luther*.  The *Luther* complaints were filed in California state court and "expressly did not seek to meet the requirements of Rule 23."  *Strategic Capital Bank*, 2012 WL 5900973, at *13.  *American Pipe* did not—and, under the Rules Enabling Act, could not—create a new individual right for absent class members in any state class

---

[35] *See also Chardon v. Fumero Soto*, 462 U.S. 650, 661 (1983) ("*American Pipe* simply asserts a federal interest in assuring the efficiency and economy of the class action procedure."); *Basch v. Ground Round, Inc.*, 139 F.3d 6, 11 (1st Cir. 1998) ("[R]espect for Rule 23 and considerations of judicial economy . . . animated the *Crown, Cork* and *American Pipe* tolling rules.").

1  action in any state court to bring stale claims in federal court years after a statute of

2  repose or statute of limitations had expired.  In this Court's words:

3       This Court's alternative ruling in *Strategic Capital Bank* was carefully

4       considered.   Federal case law supports the ruling.   The rule is

5       particularly resonant with respect to class actions based on the

6       Securities Act.   Finally, state court rulings on cross-jurisdictional

7       tolling demonstrate that such tolling is based on procedural rules, not

8       the identity of the substantive law between the two actions.   In

9       summary, only a class action filed in federal court tolls the federal

10      statute of limitations for later complaints.  *American Pipe* tolling does

11      not save the FDIC's claims.

12  *Security Savings Bank*, 2013 WL 1191785, at *12.  The same is true here.

13          **2.    The *Luther* Named Plaintiffs Did Not Have The Standing**
                    **Necessary To Trigger *American Pipe* Tolling In Any Event.**

14      *American Pipe* tolling also does not apply in *Guaranty Bank* for the same

15  reasons that it did not apply in *Strategic Capital Bank*, *Security Savings Bank*,

16  *Colonial Bank*, *United Western Bank*, and many other cases in the *Countrywide*

17  *MBS MDL*.  Irrespective of the fact that *Luther* was filed in state court and not in

18  federal court, *American Pipe* tolling could not apply in *Guaranty Bank* under any

19  circumstances because "*American Pipe* tolling applies only to Countrywide MBS

20  for which the 'named plaintiffs in the prior putative class actions had standing to

21  sue, *i.e.,* those tranches that the *Luther* named plaintiffs had actually purchased.'"

22  *Strategic Capital Bank*, 2012 WL 5900973, at *8 (quoting *Allstate,* 824 F. Supp. 2d

23  at 1169).[36]  Here, tolling does not apply because the *Luther* named plaintiffs lacked

24

25  ───────────────
    [36] *Accord Security Savings Bank*, 2013 WL 1191785, at *7 (same); *United Western*

26  *Bank I*, slip op. at 5 (same); *see also Am. Int'l Grp., Inc. v. Countrywide Fin. Corp.*,
    834 F. Supp. 2d 949, 953 (C.D. Cal. 2012) (same); *Putnam Bank*, 860 F. Supp. 2d

27  at 1070 (same); *W. & S. Life Ins. Co. v. Countrywide Fin. Corp.*, No. 11-cv-07166,
    2012 WL 1097244, at *2 (C.D. Cal. Mar. 9, 2012) (same); *Dexia Holdings, Inc. v.*

28  *Countrywide Fin. Corp.*, No. 11-cv-07165, 2012 WL 1798997, at *2 (C.D. Cal.
    Feb. 17, 2012) (same); *Stichting*, 802 F. Supp. 2d at 1131 (same); *Me. State Ret. Sys.*

1    standing as to the specific Countrywide MBS tranches at issue.  *See Security*

2    *Savings Bank*, 2013 WL 1191785, at *7 ("When a class action plaintiff lacks

3    standing with respect to certain claims, jurisdiction does not attach for those claims,

4    meaning that federal courts have no power to extend the statutorily defined

5    limitation periods.").  The *Luther* named plaintiffs did not purchase in any of the

6    eight tranches in which Guaranty Bank allegedly purchased.[37]  Those tranches did

7    not belong in *Luther* in the first place (because no plaintiff had purchased in them),

8    and *Luther* could not and did not toll the statute of repose or the statute of

9    limitations for those tranches.  *See Putnam Bank*, 860 F. Supp. 2d at 1068-69.  Thus,

10   Plaintiff's 1933 Act claims should be dismissed as time-barred.  *See, e.g.*, *id.*

11   at 1070.

12            Plaintiff's allegation that Guaranty Bank and the *Luther* named plaintiffs both

13   purchased certificates "issued pursuant to the same registration statement" and

14   "backed by loans originated or acquired by [Countrywide Home Loans]," *Guaranty*

15   *Bank* Am. Compl. ¶ 162, does not change this result.  In *Strategic Capital Bank* and

16   *Security Savings Bank*, the FDIC made—and this Court rejected—the very same

17   argument.  *See Strategic Capital Bank*, 2012 WL 5900973, at *8; *Security Savings*

18   *Bank*, 2013 WL 1191785, at *7.  There, relying on the Second Circuit's decision in

19   *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d

20   Cir. 2012), the FDIC argued that the *Luther* named plaintiffs had standing to sue on

21   all certificates issued pursuant to common registration statements and backed by

22   loans from common mortgage originators.  *Strategic Capital Bank*, 2012

23   WL 5900973, at *8; *Security Savings Bank*, 2013 WL 1191785, at *7.  This Court,

24   _____

25   *v. Countrywide Fin. Corp.*, No. 10-cv-00302, 2011 WL 4389689, at *6 (C.D. Cal. May 5, 2011) ("*Maine State II*") (same).

26   [37] *See* Decl. of Spencer A. Burkholz in Support of Mot. for Appointment as Lead Plaintiff and Approval of Selection of Counsel, Ex. B, *Me. State Ret. Sys. v.*

27   *Countrywide Fin. Corp.*, No. 10-cv-00302 (C.D. Cal. Apr. 2, 2010) (RJN Ex. 34); 2d Am. Compl., Ex. E, *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-cv-

28   00302 (C.D. Cal. Dec. 6, 2010) (RJN Ex. 35).

consistent with every federal court other than the Second Circuit, was "not persuaded by the reasoning of the Second Circuit" because, among other things, it "fails to account for the differences between securities cases involving MBS and class actions based on other kinds of securities and injuries." *Strategic Capital Bank*, 2012 WL 5900973, at *10.  As this Court explained, "[u]nlike . . . simple securities cases, where each plaintiff in the class complains of the same behavior by the defendant, the issuer of RMBS acts differently towards purchasers of different offerings, through entirely different documents and loan pools," because "[e]ach certificate in an RMBS is backed by different loan pools, described in the offering documents, and the representations made in the prospectus supplements about each certificate are therefore unique." *Strategic Capital Bank*, 2012 WL 5900973, at *11.[38]  In sum:

> [*NECA-IBEW*] is inconsistent with Supreme Court precedent.  *NECA-IBEW* is inconsistent with Ninth Circuit precedent.  The decision is inconsistent with the prior rulings of every federal court to consider similar questions in the RMBS context, including the First Circuit Court of Appeal and numerous district courts, both in and outside the Second Circuit.  Those courts extend standing only to the offerings or tranches purchased by the named plaintiff. . . .  Finally, the policy implications of the Second Circuit's rule remain worrisome.  It would enable plaintiffs to expand a small securities purchase into an

---

[38] *Accord Maine State I*, 722 F. Supp. 2d at 1164 ("Each MBS is backed by a pool of unique loans, and the representations made in the prospectus supplements accompanying the issuance of those securities are themselves unique, focused on the specific loans underlying each offering and the specific underwriting standards and origination practices in effect at the time those specific loans were originated.  Even where there is a common shelf registration statement, that statement contained only an illustrative form of a prospectus supplement."); *Maine State II*, 2011 WL 4389689, at *6 ("Under Article III, Plaintiffs lack standing to sue on Certificates they did not purchase because they have suffered no injury from those investments they did not make. . . . The key to the standing issue is the significant differences between the underlying pools of mortgages.").

1  enormous and unwieldy class action that under *American Pipe*, would

2  toll the statute of limitations as to all securities with any common

3  mortgage originator, even if the originator created only a small

4  portion of the loans at issue.  For these reasons, the Court again rejects

5  the reasoning of *NECA-IBEW*.

6  *Security Savings Bank*, 2013 WL 1191785, at *7 (citations omitted); *see also Nat'l*

7  *Credit Union Admin. Bd. v. Goldman Sachs & Co.*, No. 11-cv-06521, slip op. at 5-7

8  (C.D. Cal. Mar. 14, 2013 Tentative Ruling) (Dkt. No. 144) ("[T]his Court shares

9  Judge Pfaelzer's views with respect to the Second Circuit's reasoning in *NECA-*

10  *IBEW* (which is, of course, not controlling on this Court in any event).").

11  In an MBS case, the named plaintiff must have standing to sue on each of the

12  asserted claims by purchasing in each of the tranches that is part of the class action.

13  *Strategic Capital Bank*, 2012 WL 5900973, at *7, 10 & n.22.  Applying these

14  principles to the FDIC's claims in *Strategic Capital Bank*, this Court concluded:

15  The *Luther* named plaintiffs did not purchase in any of the tranches

16  SCB bought, so the *Luther* class did not include SCB.   Therefore,

17  SCB's claim was not tolled by *American Pipe*.  The FDIC's complaint

18  is time-barred, since SCB's claims had expired when the FDIC was

19  appointed receiver, and the claims are not subject to tolling.

20  2012 WL 5900973, at *12.[39]  The same is true with respect to Guaranty Bank, and

21  the FDIC's 1933 Act claims in *Guaranty Bank* are likewise time-barred.[40]

22  _____

23  [39] In addition, as this Court has held repeatedly, the allegations in the *Luther* complaints concerning the named plaintiffs' purchases of Countrywide MBS were

24  so vague and so overbroad that no investor reasonably could have concluded that the *Luther* named plaintiffs bought in the same offerings or tranches that it did.  *See*

25  *Strategic Capital Bank*, 2012 WL 5900973, at *9 ("The *Luther* class action was asserted on behalf of all claims of every tranche of 427 securities offerings.  It was

26  not plausible that David Luther or any other *Luther* plaintiff had purchased in every one of the tranches or offerings which *Luther* claims to encompass.  *Luther* was

27  precisely the type of abusive placeholder lawsuit that has prompted many courts' concern about *American Pipe* tolling.") (internal quotation marks omitted); *Putnam*

28  *Bank*, 860 F. Supp. 2d at 1070 ("[N]o reasonable plaintiff would have believed that the *Luther* plaintiffs had standing to represent a class so enormous or to protect its

1
2
3

## II.   THE FDIC'S CLAIMS UNDER THE TEXAS SECURITIES ACT AND THE NEVADA SECURITIES ACT AND ITS REMAINING CLAIMS UNDER THE 1933 ACT SHOULD BE DISMISSED.

4

In *Guaranty Bank*, Plaintiff's Texas Securities Act claims are barred by the

5

Act's three-year statute of limitations and five-year statute of repose[41] because:

6

(1) Plaintiff's claims are based on information that was publicly available more than

7

three years before the FDIC was appointed receiver for Guaranty Bank (*i.e.*, before

8

August 21, 2006); and (2) FIRREA's extender provision cannot save Plaintiff's stale

9

claims.[42]  If Plaintiff's allegations are timely (and they are not), the same data that

10

_____

11

claim. . . . *Luther* is precisely the type of abusive placeholder lawsuit that has prompted many courts' concern about *American Pipe* tolling.").

12

[40] The 1933 Act claims in *Guaranty Bank* and the remaining 1933 Act claims in *Franklin Bank* and *Security Savings Bank* also should be dismissed because the

13

amended complaints fail adequately to allege a material misrepresentation, as described in Section II.B.  *See, e.g., In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399,

14

1403 (9th Cir. 1996) (Section 11 requires an allegation "(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or

15

misrepresentation was material."); *Knollenberg v. Harmonic, Inc.*, 152 Fed. App'x 674, 684 (9th Cir. 2005) (Section 12 requires both "an omission or

16

misrepresentation" in the prospectus and "that the omission or misrepresentation was material."); *Allstate*, 824 F. Supp. 2d at 1181-82 (Section 15 requires a primary

17

violation of Section 11 or Section 12).  Further, Plaintiff's control person allegations against CFC under Section 15 in *Guaranty Bank* and *Franklin Bank* should be

18

dismissed because the FDIC has not pleaded facts supporting a plausible inference that CFC had the power "to direct or cause the direction of the management and

19

policies" of CWALT and/or CSC, *see Twombly*, 550 U.S. at 556-57; 17 C.F.R. § 230.405, but instead relies primarily on allegations regarding those entities'

20

corporate relationships, *Guaranty Bank* Am. Compl. ¶¶ 104-14; *Franklin Bank* Am. Compl. ¶¶ 104-14.  "[M]ere allegations of a corporate affiliation between defendants

21

are insufficient to indicate control by one over another."  *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010).

22

Mindful that this Court has rejected such arguments in other cases, Defendants respectfully submit them here in order to preserve the record.

23

[41] Article 581-33 of the Texas Securities Act provides for a three-year statute of limitations: "No person may sue . . . more than three years after discovery of the

24

untruth or omission, or after discovery should have been made by the exercise of reasonable diligence."  Tex. Rev. Civ. Stat. Ann. art. 581-33(H)(2).  Article 581-33

25

also provides for a five-year statute of repose: "No person may sue . . . more than five years after the sale."  *Id.*  This five-year statute of repose "begin[s] to run the

26

moment the violation (or sale) occurs, regardless of the claimant's discovery." *Escalon v. World Grp. Sec., Inc.*, No. 07-cv-214, 2008 WL 5572823, at *3 (N.D.

27

Tex. Nov. 14, 2008).

28

[42] Plaintiff does not allege any basis under state law for tolling the three-year statute of limitations in *Guaranty Bank*.  *See Centaur Classic Convertible Arbitrage Fund*

1   did not trigger the Texas Securities Act's statute of limitations in 2006 cannot

2   establish a plausible basis for Plaintiff's claims in 2012.  For the same reasons,

3   Plaintiff also fails to allege adequately its state securities law claims and remaining

4   1933 Act claims in *Franklin Bank* and *Security Savings Bank*.

5         **A.**    **Plaintiff's Claims In *Guaranty Bank* Are Time-Barred.**

6            **1.**    **Plaintiff's Claims Are Based On Information That Was Publicly Available More Than Three Years Before The FDIC**

7                   **Was Appointed Receiver For Guaranty Bank.**

8        Unlike the complaints in cases in the *Countrywide MBS MDL* that were filed

9   by plaintiffs other than the FDIC, the allegations in the *Guaranty Bank* amended

10  complaint (and the other complaints filed by the FDIC) depend on statistical

11  analyses of data that were publicly available before August 2006 (*i.e.*, more than

12  three years before the FDIC was appointed receiver for Guaranty Bank).  In this

13  case, a reasonably diligent investor should have discovered the data underlying the

14  amended complaint's allegations about LTVs and appraisals, owner-occupancy

15  status, underwriting standards, and credit ratings before August 21, 2006.[43]  This

16  Court already has dismissed as untimely MBS claims "based (in part) on a detailed

17  loan-level analysis" akin to Plaintiff's analysis here.  *Allstate*, 824 F. Supp. 2d

18  at 1179.  The data on which Plaintiff bases its loan-level analysis—"[i]nformation

19  regarding each of the inputs for any such analysis, for each loan that underlay the

20  RMBS [*i.e.*, residential MBS]," *id.* at 1181[44]—were available more than three years

21  before the FDIC was appointed receiver for Guaranty Bank on August 21, 2009.

22  Guaranty Bank "could have analyzed that information whenever it wished."  *Id.*

23  _____

24  *Ltd. v. Countrywide Fin. Corp.*, 878 F. Supp. 2d 1009, 1015 (C.D. Cal. 2011) ("[S]tate law applies to the question of tolling state claims.").

25  [43] Mindful of this Court's decision in *United Western Bank II*, the Countrywide Defendants respectfully submit this argument to preserve the record.  *See supra* n.30.

26  [44] The results of such a loan-level analysis "must be considered summaries of other,

27  previously disclosed facts."  *Allstate*, 824 F. Supp. 2d at 1181.  "[A] summary statistic is available (even if not compiled) on the date that the underlying facts are

28  available."  *Id.*

1   "[T]he fact that [Guaranty Bank] declined to do so does not toll the statute of

2   limitations." *Id.*

3               **2.    FIRREA's Extender Provision Cannot Save Plaintiff's Stale
                        Claims In *Guaranty Bank*.**

4        Plaintiff cannot dispute that its Texas Securities Act claims were barred by

5   both the statute of repose and the statute of limitations when it filed suit in *Guaranty

6   Bank* on August 17, 2012.  The five-year repose period had expired on all eight of

7   the Certificates before the FDIC filed this action because Guaranty Bank purchased

8   all of the Certificates by April 2006—*i.e.*, more than six years before the FDIC filed

9   suit.  *See Guaranty Bank* Am. Compl. ¶ 29, Schedules 1–8.  The three-year

10  limitations period had also expired on all eight of the Certificates because a

11  reasonable investor should have discovered Plaintiff's claims before August 2008.

12  *Security Savings Bank*, 2013 WL 1191785, at *4.  Plaintiff argues, however, that it

13  may invoke FIRREA's extender provision, 12 U.S.C. § 1821(d)(14), to extend the

14  applicable limitations period to three years from the date of the FDIC's appointment

15  as receiver (*i.e.*, to August 21, 2012).  *Guaranty Bank* Am. Compl. ¶ 150.  Not so.

16  FIRREA's extender provision does not apply to statutes of repose or "*sui generis*"

17  statutory claims.[45]

18       *First*, FIRREA's extender provision does not apply to statutes of repose, but

19  only to statutes of limitations.  As the Ninth Circuit has explained, "[t]he focus of a

20  statute of repose is entirely different from the focus of a statute of limitations,"

21  because a statute of limitations "bars a plaintiff from proceeding because he has

22  slept on his rights, or otherwise been inattentive" while a statute of repose "declares

23  that nobody should be liable at all after a certain amount of time has passed, and that

24  it is unjust to allow an action to proceed after that."  *Lyon v. Agusta S.P.A.*, 252 F.3d

25  1078, 1086 (9th Cir. 2001).  The plain language of FIRREA's extender provision

26

27  _____
    [45] Mindful of this Court's decision in *Security Savings Bank*, 2013 WL 1191785,
    at *2, the Countrywide Defendants respectfully submit these arguments to preserve

28  the record.

shows that it applies only to "statutes of limitations and not substantive statutes of repose." *Resolution Trust Co. v. Olson*, 768 F. Supp. 283, 285 (D. Ariz. 1991).[46] For example, there are three unambiguous references in FIRREA to the applicable statute of "limitations" and no references whatsoever to any statute of "repose." *See* 12 U.S.C. § 1821(d)(14). Moreover, the extender statute repeatedly speaks of when a claim "accrues," which is the language of a statute of limitations but not a statute of repose. *See id.* In addition, excluding statutes of repose is consistent with the apparent purpose of FIRREA's extender provision—*i.e.*, to provide the FDIC with additional time to identify, investigate, and assess potential claims that it may assert on behalf of a failed bank—which is identical to the purpose of other legal doctrines that provide relief from statutes of limitations but not from statutes of repose.

*Second*, FIRREA's extender provision does not apply to "*sui generis*" statutory claims like Texas Securities Act claims, but only to "tort" and "contract" claims. Plaintiff's claims neither exist under common law tort principles nor are created by a contract. Rather, they are rights created by statute, as part of a separate and unique body of law aimed at regulating the securities markets. This sort of statutory right is often called "*sui generis*," or "of its own kind." *See, e.g.*, *Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.*, 792 F.2d 341, 352-53 (3d Cir. 1986). On its face, the Texas Securities Act provides "rights and remedies . . . [that] are in addition to any other rights (including exemplary or punitive damages) or remedies that may exist at law or in equity," Tex. Rev. Civ. Stat. Ann. art. 581–33(M), such that a claim under the Texas Securities Act is "in addition to" a common law tort or contract claim. In short, the Texas Securities Act is *sui generis* and cannot be characterized as sounding in either tort or contract. For this reason as well,

---

[46] *See also Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*, No. 11-cv-06521 (C.D. Cal.) (Mar. 15, 2012 Tentative Ruling), *adopted by* Civil Minutes on Sept. 4, 2012; *Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*, No. 11-cv-05887 (C.D. Cal.) (Dec. 19, 2011 Tentative Ruling), *adopted by* Minute Order dated Mar. 15, 2012.

1   FIRREA's extender provision cannot save Plaintiff's claims, which are time-barred

2   and must be dismissed with prejudice.

### B. Plaintiff Does Not Plead An Actionable Misrepresentation In *Guaranty Bank*, *Franklin Bank*, Or *Security Savings Bank*.

3

4

5       To state a claim, Plaintiff must allege "more than a sheer possibility" that

6   Defendants made an actionable misrepresentation. *Iqbal*, 556 U.S. at 678.  Rather,

7   Plaintiff must plead facts showing a plausible basis for its claims. *Id.*  The

8   allegations in the amended complaints, however, fail to state a plausible claim for

9   misrepresentation under the Texas Securities Act, the Nevada Securities Act, or the

10  1933 Act. *See id.*; *Twombly*, 550 U.S. at 570.  None of Plaintiff's four categories of

    allegations satisfies the *Twombly/Iqbal* plausibility standard.[47]

11

### 1. Owner-Occupancy Status (*Guaranty Bank* Am. Compl. ¶¶ 68-79; *Franklin Bank* Am. Compl. ¶¶ 68-79; *Security Savings Bank* Am. Compl. ¶¶ 64-75).

12

13      Plaintiff's allegations that the prospectus supplements misrepresented owner-

14  occupancy status should be dismissed for the same reason that this Court dismissed

15  identical allegations by the FDIC in *United Western Bank II*:  the "owner-occupancy

16  allegations d[id] not plead a misstatement, since the Offering Documents revealed

17  that owner-occupancy data was self-reported by borrowers." *United Western Bank*

18  *II*, 2013 WL 49727, at *2; *see also Mass. Mut. Life Ins. Co. v. Countrywide Fin.*

19  *Corp.*, No.11-cv-10414, 2012 WL 3578666, at *2 (C.D. Cal. Aug. 17, 2012)

20  (Defendants are "not . . . liable for accurately repeating information about

21  occupancy provided by borrowers, because the offering documents explicitly stated

22  that borrowers might have made misrepresentations at the time of origination.").

23      As it did in *United Western Bank*, the FDIC here alleges in all three cases that

24  representations in the prospectus supplements regarding owner-occupancy were

25  false because the "stated number of mortgage loans secured by primary residences

26

27  ---
    [47] Mindful that this Court has rejected such arguments in other cases with respect to underwriting standards and credit ratings, Defendants respectfully submit them here
28  in order to preserve the record.

1    was higher than the actual number of loans in that category or . . . the stated number

2    of mortgage loans not secured by primary residences was lower than the actual

3    number of loans in that category." *Guaranty Bank* Am. Compl. ¶ 71; *Franklin Bank*

4    Am. Compl. ¶ 71; *Security Savings Bank* Am. Compl. ¶ 67.  Just like the prospectus

5    supplements at issue in *United Western Bank II*, the prospectus supplements at issue

6    here explicitly disclosed that the occupancy status of the properties in the loan pools

7    was "[b]ased upon representations of the related borrowers at the time of

8    origination."  *See* Appendix D.  Therefore, just as this Court dismissed the FDIC's

9    claims based on owner-occupancy data in *United Western Bank II*, this Court should

10   dismiss the claims based on owner-occupancy data in *Guaranty Bank*, *Franklin*

11   *Bank*, and *Security Savings Bank*.

12          **2.**  **Additional Liens, LTVs, And Appraisals (*Guaranty Bank***
13   **Am. Compl. ¶¶ 34-67; *Franklin Bank* Am. Compl. ¶¶ 34-67;**
     **_Security Savings Bank_ Am. Compl. ¶¶ 30-63).**

14            **a.**  **Additional Liens.**

15         The allegations in the amended complaints regarding undisclosed "additional

16   liens" do not plead an actionable misrepresentation concerning LTVs (or

17   appraisals).  In *United Western Bank II*, this Court held:  "The allegation of

18   additional undisclosed liens fails to state a claim for the same reason [as the FDIC's

19   owner-occupancy allegations], since the prospectus supplements stated that the

20   underwriting guidelines did not prohibit secondary financing."  2013 WL 49727,

21   at *2 n.4.  Here, the FDIC's claims based on "additional liens" likewise fail because

22   the prospectus supplements at issue explicitly stated that the loan originator's

23   "underwriting guidelines do not prohibit or otherwise restrict a [borrower] from

24   obtaining secondary financing from lenders other than [the originator], whether at

25   origination of the mortgage loan or thereafter."  *See* Appendix D.  Based on that

26   disclosure alone, Plaintiff's allegations about "additional liens" fail to state a claim.

27         Moreover, the prospectus supplements clearly defined LTVs as ratios

28   involving only the mortgage loans originated.  *See* Appendix D.  On their face,

1   LTVs did not account for "all loans," which the FDIC admits in *Guaranty Bank* and

2   *Security Savings Bank* would instead be part of a separate calculation of combined

3   LTVs (or CLTVs).  *See Guaranty Bank* Am. Compl. ¶ 53 n.7; *Security Savings*

4   *Bank* Am. Compl. ¶ 50 n.5.  Accordingly, the allegations in the amended complaints

5   based on "additional liens" fail to state a claim and should be dismissed.

6                    **b.    LTVs And Appraisals.**

7        Plaintiff's attempted use of an AVM software program in 2012, years after

8   the pooled loans were originated and appraised, to support allegations of misstated

9   LTVs and appraisals in 2005 and 2006 does not satisfy the *Twombly/Iqbal*

10  plausibility standard.[48]  As an initial matter, the amended complaints' allegations

11  concerning AVM results do not and cannot plead an actionable misrepresentation

12  concerning LTVs or appraisals according to prior public statements by the FDIC

13  itself and the Appraisal Standards Board (on which the amended complaints rely).

14  In 2010, the FDIC took the position that "the result of an [AVM], by itself or signed

15  by an appraiser, is *not* an appraisal," and that "an AVM . . . is *not*, in and of itself, an

16  alternative to an evaluation."  Interagency Appraisal and Evaluation Guidelines, 75

17  Fed. Reg. 77450 at 77455, 77459 (emphasis added) (RJN Ex. 38).  The Appraisal

18  Standards Board has also observed that "[t]he output of an AVM is *not*, by itself, an

19  appraisal."  Appraisal Standards Board, Advisory Opinion 18 (Use of an Automated

20

21  _____

    [48] Plaintiff's allegations that "a material number of mortgage loans in the collateral
22  pools had appraisals conducted that deviated from USPAP [Uniform Standards of
    Professional Appraisal Practice]," *Guaranty Bank* Am. Compl. ¶ 65; *Franklin Bank*
23  Am. Compl. ¶ 65; *Security Savings Bank* Am. Compl. ¶ 61, are not based on
    independent facts, but are derived entirely by inference from its AVM allegations.
24  They therefore fail for the same reasons that the AVM allegations fail.  Further, a
    "bare assertion that appraisals were not made in accordance with USPAP"—which
25  is all the FDIC offers—is a "legal conclusion not entitled to the assumption of
    truth."  *Emps.' Ret. Sys. of Gov't of V.I. v. J.P. Morgan Chase & Co.*, 804 F. Supp.
26  2d 141, 153 (S.D.N.Y. 2011) (internal quotation marks omitted); *accord*
    *Boilermakers Nat'l Annuity Trust Fund v. WAMU Mortg. Pass Through Certs.,*
27  *Series AR1*, 748 F. Supp. 2d 1246, 1256 (W.D. Wash. 2010) (rejecting USPAP-
    related allegations where "Plaintiffs have not substantiated their conclusory
28  allegations with facts suggesting a viable claim"); *Tsereteli v. Residential Asset*
    *Securitization Trust 2006-A8*, 692 F. Supp. 2d 387, 393 (S.D.N.Y. 2010) (same).

Valuation Model (AVM)) at A-42, *in* USPAP Advisory Opinions 2012–2013 Edition, *available at* http://www.uspap.org/#/166/ (RJN Ex. 39) (emphasis added). This is all the more true when the AVM results are compared to appraisals performed *more than five years earlier*.

And the company that designed and sold the AVM software program that Plaintiff uses to support all these allegations—CoreLogic—itself agrees.  In a sworn affidavit submitted to the New York Supreme Court on May 9, 2012, that Defendants recently obtained, CoreLogic stated that even where "a difference is identified between AVM value ranges and appraisals' opinions of value," it is inappropriate to "draw conclusions on opinions of value contained in professionally performed appraisals . . . without commissioning *actual* retrospective review appraisals":

> Professionals in the real estate field should not . . . rely solely on CoreLogic (or other) AVMs to make reliable determinations of the reasonableness of value opinions offered by licensed or certified appraisers . . . *Our AVMs are not used to determine whether an appraiser actually inflated or deflated an opinion of value. . . .* [E]ven where a difference is identified between AVM value ranges and appraisals' opinions of value, *no professional would purport to draw conclusions on opinions of value* contained in professionally performed appraisals . . . *A professional should not use an AVM without knowing what inputs are going into the model and how the model calculates and produces its valuation. . . .* The slightest nuance can significantly alter an AVM's output . . . AVMs frequently produce entirely *inaccurate* values in rapidly fluctuating markets. . . . In addition, AVMs struggle to account for property-specific attributes . . . *that can only be assessed through an in-person professional inspection or appraisal. . . .*   One cannot discern anything of

1    significance from [a] pinpoint AVM estimate, and we certainly advise

2    our clients to utilize our confidence intervals [similar to a margin of

3    error] when using our AVMs.

4  CoreLogic Aff. at ¶¶ 3-6, 8, 10 (penultimate emphasis in original; other emphases

5  added) (RJN Ex. 36).  The FDIC, however, seeks to do exactly what CoreLogic

6  itself says "no professional" would do: use CoreLogic's AVM, standing alone, to

7  accuse professional appraisers of deliberately misrepresenting their own valuation

8  opinions and accuse Defendants of misstating LTVs based on those appraisals.  *See,*

9  *e.g.*, *Guaranty Bank* Am. Compl. ¶¶ 44-46; *Franklin Bank* Am. Compl. ¶¶ 44-46;

10 *Security Savings Bank* Am. Compl. ¶¶ 40-42.[49]

11      This Court may consider the CoreLogic affidavit in connection with

12 Defendants' motions to dismiss for at least three reasons.  *First*, in determining

13 whether a complaint's allegations are plausible, a court may consider both the

14 allegations themselves and facts subject to judicial notice.  *See Twombly*, 550 U.S.

15

16 [49] In any event, even using AVMs incorrectly, as the FDIC has, the AVM results upon which the FDIC relies in *Guaranty Bank*, *Franklin Bank*, and *Security Savings*

17 *Bank* do *not* show that the prospectus supplements misstated LTVs or appraisals. Plaintiff alleges that "testing services have determined that this AVM is the most

18 accurate of all such models," *Guaranty Bank* Am. Compl. ¶ 42; *Franklin Bank* Am. Compl. ¶ 42; *Security Savings Bank* Am. Compl. ¶ 38, but CoreLogic's AVM—like

19 all AVMs—has a margin of error.  CoreLogic has explained that a retrospective AVM run today does *not* replicate the results of a contemporaneous AVM run at the

20 time of the loans' originations.  *See* Susan Allen, *Retrospective AVMs – How Do They Work & How Accurate Are They?*, CoreLogic White Paper, at 1 (Aug. 2010),

21 *available at* http://www.corelogic.com/product-media/asset_upload_file306_15228.pdf (emphasis added) (RJN Ex. 40).

22 Consequently, CoreLogic uses a 15 percent margin of error when interpreting retrospective AVM results.  *Id.* at 2 (concluding that an AVM estimate is "accurate"

23 if it is within 15 percent of the actual sale price); *see also* CoreLogic Aff. ¶ 10 ("AVMs are created with confidence scores . . . [and] [c]onsideration of these scores

24 is essential to proper use of AVMs.").  For fifteen of the nineteen offerings at issue in *Guaranty Bank*, *Franklin Bank*, and *Security Savings Bank*, Plaintiff found a

25 difference between the LTVs stated in the prospectus supplements and the LTVs retrospectively calculated for the amended complaints of roughly 15 percent or

26 less—which is generally *within the margin of error*—as Plaintiff alleges (in Item 49 of Schedules 1–8 of the *Guaranty Bank* amended complaint, Item 49 of Schedules

27 1–3, 6 of the *Franklin Bank* amended complaint, and Item 45 of Schedules 2, 3, and 5 of the *Security Savings Bank* amended complaint).  In other words, the value

28 derived by the AVM was not statistically different from the original appraised value.

1   at 568 & n.13; *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012)

2   (noting that courts may judicially notice documents on file in federal or state courts

3   and taking judicial notice of a declaration filed by a defendant in an earlier

4   litigation).  Here, the judicially noticeable facts include the fact that the designer of

5   the AVM used by the FDIC has warned, publicly and under oath, that "no

6   professional" would draw the inferences that the FDIC seeks to draw here from its

7   AVM results.  The fact that the source of the FDIC's AVM has publicly disavowed

8   that its technology can support the inferences the FDIC advocates may be

9   considered by this Court in assessing whether those inferences are plausible.

10          *Second*, in deciding a motion to dismiss, this Court may consider a document

11   (1) "the authenticity of which is not contested," and (2) which is "crucial to the

12   plaintiff's claims."  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998),

13   *superseded on other grounds by statute*.  Both requirements are met with respect

14   to the CoreLogic Affidavit.  Plaintiff cannot dispute the authenticity of the

15   CoreLogic Affidavit.  Nor can Plaintiff dispute that the CoreLogic AVM is crucial

16   to its claims.  Plaintiff admits that its LTV and property appraisal allegations are

17   based on the results of an AVM run on FDIC-sampled loans in each of the

18   Countrywide MBS offerings at issue, which supposedly show that appraised

19   values were overstated and LTVs were understated.  *See Guaranty Bank* Am.

20   Compl. ¶¶ 42-44; *Franklin Bank* Am. Compl. ¶¶ 42-44; *Security Savings Bank*

21   Am. Compl. ¶¶ 38-40.  The FDIC may not base its claim on CoreLogic's

22   retrospective AVM but keep this Court from considering CoreLogic's explanation

23   of how that AVM works and how accurate that AVM is, especially because the

24   amended complaints themselves contain virtually no details about the

25   methodology or accuracy of the AVM that Plaintiff used.  *See Parrino*, 146 F.3d

26

27

28

1    at 706 (holding that a district court may consider documents essential to the

2    plaintiff's complaint in ruling on the defendants' motions to dismiss).[50]

3        *Third*, the CoreLogic Affidavit demonstrates that the AVM-based allegations

4    should be stricken because the FDIC had no good-faith basis for making them in the

5    first place.  If the FDIC asked CoreLogic whether its technology legitimately could

6    be used to accuse professional appraisers of fraud, then presumably the FDIC was

7    told "no" for the reasons stated in the affidavit—in which case the FDIC had no

8    Rule 11 basis for making such accusations.  Alternatively, if the FDIC did not

9    bother asking the question, then it failed to conduct a reasonable investigation as

10   required by Rule 11.  Either way, its AVM-based allegations lack a Rule 11 basis

11   and should be stricken.  This Court has previously stricken allegations in the

12   *Countrywide MBS MDL* that lacked a Rule 11 basis.  *See, e.g., Maine State II*, 2011

13   WL 4389689, at *20-21.

14       In any event, the AVM results on which the amended complaints rely are

15   opinions—not facts—that are insufficient to state a claim here.  *See Baroi v.*

16   *Platinum Condo. Dev., LLC*, No. 09-cv-00671, 2012 WL 2847919, at *2 (D. Nev.

17   2012) ("[E]stimates, opinions, or promises of future performance typically are not

18   actionable as fraud."); *Aegis Ins. Holding Co. v. Gaiser*, No. 04-05-00938, 2007

19   WL 906328, at *6 (Tex. App. Mar. 28, 2007) ("[S]tatements of opinion, including

20   opinions regarding value of the securities, are generally not actionable under

21   article 581-33 of the TSA."); *Paull v. Capital Res. Mgmt., Inc.*, 987 S.W.2d 214,

22   218-19 (Tex. App. 1999) (same).  In *Allstate*, this Court considered allegations

23

24   _____
     [50] *See, e.g., Weiner v. Klais & Co. Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) ("[A]
     defendant may introduce certain pertinent documents if the plaintiff fails to do so.

25   Otherwise, a plaintiff with a legally deficient claim could survive a motion to
     dismiss simply by failing to attach a dispositive document upon which it relied.")

26   (citations omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir.
     1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice

27   and which were integral to their claim—and that they apparently most wanted to
     avoid—may not serve as a means of forestalling the district court's decision on the

28   motion [to dismiss].") (relied on by the Ninth Circuit in *Parrino*, 146 F.3d at 706).

that "a study of 19,000 individual loans . . . demonstrates that, at the time they were sold, the RMBS purchased by Allstate were worth substantially less than the amount that Allstate paid for them."  824 F. Supp. 2d at 1180.  This Court found that the plaintiff "confuse[d] the term 'fact' with the terms 'analysis' or 'opinion,'" which this Court described as "a process whereby one evaluates, considers, and synthesizes facts to reach a conclusion."  *Id.*  The "conclusion that the value of a piece of collateral was overstated," in turn, is "an opinion" based on "complex and unverifiable mathematical models."  *Id.* at 1180 & n.21, 1181.[51]

In *Guaranty Bank*, *Franklin Bank*, and *Security Savings Bank*, the opinions are based on the subjective design choices of the unknown software programmers and designers who selected the AVM's data inputs and the unspecified methods they chose for analyzing those data.  Therefore, the AVM results do not state a claim as a matter of law.  *See In re Textrainer P'ship Sec. Litig.*, No. C 05-0969, 2006 WL 1328851, at *5 (N.D. Cal. May 15, 2006) ("Plaintiff's conclusory allegations as to an unspecified analysis performed by an unnamed or otherwise identified consultant, and which fail to include any information about the consultant's qualifications, how the analysis was performed, or the data upon which the consultant relied, are inadequate."); *accord* CoreLogic Aff. ¶ 5 ("Detailed knowledge of the particular AVM product used is essential for purposes of assessing the reasonableness of any analysis one intends to conduct based on the AVM results. There is no way of knowing whether an AVM is biased, systematically flawed or simply inappropriate for the desired use without gaining this intimate familiarity. . . .

---

[51] *Accord In re Salomon Analyst Level 3 Litig.*, 373 F. Supp. 2d 248, 251-52 (S.D.N.Y. 2005) (rejecting "plaintiffs' characterization of valuation models as 'fact' rather than 'opinion'" because "financial valuation models depend so heavily on the discretionary choices of the modeler . . . and choice of 'comparables' that the resulting models and their predictions can only fairly be characterized as subjective opinions. Like other opinions, some valuation models may be more or less reliable than other models, have more or less predictive power, or hew more or less closely to the conventional wisdom on a subject, but they are nonetheless opinions and not objective facts.").

A professional should not use an AVM without knowing what inputs are going into the model and how the model calculates and produces its valuation.").[52]

### 3. Underwriting Standards (*Guaranty Bank* Am. Compl. ¶¶ 80-97; *Franklin Bank* Am. Compl. ¶¶ 80-97; *Security Savings Bank* Am. Compl. ¶¶ 76-93).

In *Guaranty Bank*, *Franklin Bank* and *Security Savings Bank*, Plaintiff bases its allegations that the prospectus supplements misrepresented loan originators' underwriting standards on (1) "statistical data" and (2) "other evidence" lifted from complaints by other plaintiffs, a report by the Financial Crisis Inquiry Commission, and settlements with state attorneys general. *Guaranty Bank* Am. Compl. ¶¶ 80-97; *Franklin Bank* Am. Compl. ¶¶ 80-97; *Security Savings Bank* Am. Compl. ¶¶ 76-93. Such allegations do not state a claim.

*First*, the amended complaints' allegations based on "statistical data" do not plead an actionable misrepresentation because they do not show that the prospectus supplements misrepresented loan originators' underwriting standards at all. Plaintiff relies on three types of data in the amended complaints: EPD data about loans originated by CHL generally, EPD data regarding eleven of the nineteen Certificates at issue in the three cases,[53] and other delinquency data for the loans backing the Certificates at issue. As an initial matter, whatever the EPD data say about the

---

[52] In addition, the original appraisals are non-actionable opinions themselves because the amended complaints fail to allege facts showing that the appraisers (or Defendants) subjectively disbelieved those opinions. *See, e.g.*, *Tsereteli*, 692 F. Supp. 2d at 393 (dismissing appraisal allegations because "neither an appraisal nor a judgment that a property's value supports a particular loan amount is a statement of fact. Each is instead a subjective opinion based on the particular methods and assumptions the appraiser uses."); *In re IndyMac Mortg.-Backed Sec. Litig.*, 718 F. Supp. 2d 495, 511 (S.D.N.Y. 2010) (dismissing appraisal allegations because appraisals are only actionable "if the complaint alleges that the appraiser did not truly believe the appraisal at the time it was issued"); *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653, 2010 WL 1473288, at *7-8 (S.D.N.Y. Mar. 29, 2010) (same); *Footbridge Ltd. v. Countrywide Home Loans, Inc.*, No. 09 Civ. 4050, 2010 WL 3790810, at *8 (S.D.N.Y. Sept. 28, 2010) (same).

[53] The FDIC does not provide EPD data for the remaining eight Certificates at issue in *Guaranty Bank*, *Franklin Bank*, and *Security Savings Bank*. *See Guaranty Bank* Am. Compl. Schedules 2, 6–7; *Franklin Bank* Am. Compl. Schedules 2-3, 6; *Security Savings Bank* Am. Compl. Schedules 2, 5.

1   general performance of loans originated by CHL, they say nothing about the specific

2   performance of loans originated by CHL that back the Certificates at issue in

3   *Guaranty Bank*, *Franklin Bank*, or *Security Savings Bank*.  Moreover, the FDIC

4   admits that the highest EPD rate for any of the Certificates at issue was *only 1.4%*—

5   a far cry from the EPD rates that courts have deemed sufficient to support

6   allegations that MBS defendants disregarded their underwriting guidelines.  *See,*

7   *e.g.*, *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d

8   109, 123-24 & n.9 (2d Cir. 2013) (deeming sufficient *EPD rates of 18%*).

9   Consequently, the EPD data provide no basis from which to infer that Countrywide

10  did not comply with its stated underwriting standards.[54]

11  _____

12  [54] According to the amended complaints, "Plaintiff is informed and believes that
    what was true about recently securitized mortgage loans in general was true in
    particular of loans originated by the [entities] that originated the loans in the
13  collateral pools of these securitizations."  *Guaranty Bank* Am. Compl. ¶ 85;
    *Franklin Bank* Am. Compl. ¶ 85; *Security Savings Bank* Am. Compl. ¶ 81.  This
14  allegation necessarily fails as a matter of both logic and law.  High delinquency
    levels in securities backed by CHL and other loan originators do not plausibly
15  support an inference that loan originators did not adhere to stated underwriting
    standards with respect to the loans backing the Certificates at issue.  *See N.J.*
16  *Carpenters Health Fund v. NovaStar Mortg., Inc.*, No. 08 Civ. 5310, 2012
    WL 1076143, at *5 (S.D.N.Y. Mar. 29, 2012) (dismissing claims because "Plaintiff
17  does not provide details that would tie its claim of loosened underwriting guidelines
    to the specific loans that secured the Class M-1 Certificates that Plaintiff bought");
18  *Maine State I*, 722 F. Supp. 2d at 1164 ("Each MBS is backed by a pool of unique
    loans, and the representations made in the prospectus supplements accompanying
19  the issuance of those securities are themselves unique, focused on the specific loans
    underlying each offering and the specific underwriting standards and origination
20  practices in effect at the time those specific loans were originated.").  Rather, high
    delinquency levels across loan originators support an inference that economic
21  conditions affected the entire mortgage lending industry.  *See Plumbers' &*
    *Pipefitters' Local No. 562 Supp. Plan & Trust v. J.P. Morgan Acceptance Corp.*,
22  No. 08 Civ. 1713, 2012 WL 601448, at *11 (S.D.N.Y. Feb. 23, 2012) (finding that
    poor loan performance "could [have been] caused by any number of broad economic
23  factors besides . . . deviation[s] from descriptions in the Offering Documents" and
    would not itself "establish that the[] offering documents contained material
24  misstatements and omissions"); *Mass. Mut. Life Ins. Co. v. Residential Funding Co.*
    *LLC*, 843 F. Supp. 2d 191, 208 (D. Mass. 2012) (observing that delinquencies and
25  defaults merely "indicated that the loans were performing poorly," not a failure to
    comply with underwriting standards).  Furthermore, allegations based on
26  information and belief without supporting facts are insufficient under
    *Twombly/Iqbal.  See Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir.
27  2009); *Logan v. VSI Meter Servs., Inc.*, No. 10-cv-2478, 2012 WL 928400, at *2
    (S.D. Cal. Mar. 19, 2012); *Interscope Records v. Rodriguez*, No. 06-cv-2485, 2007
28  WL 2408484, at *1 (S.D. Cal. Aug. 17, 2007).

1    Further, the "other statistical data" cited in the amended complaints are

2    equally meaningless.  The amended complaints rely on "the number of loans on

3    which the borrowers *were ever* 90 or more days delinquent in their payments" and

4    "the number of loans on which the borrowers are 30 or more days delinquent" on

5    July 31, 2011 (*Franklin Bank*), October 31, 2011 (*Security Savings Bank*), and

6    March 31, 2012 (*Guaranty Bank*), to support their allegations that prospectus

7    supplements misrepresented the underwriting standards used to originate loans in

8    2005 and 2006.  *Franklin Bank* Am. Compl. ¶¶ 88-89 (emphasis added); *Security*

9    *Savings Bank* Am. Compl. ¶¶ 84-85 (emphasis added); *Guaranty Bank* Am. Compl.

10   ¶¶ 88-89 (emphasis added).  Delinquency rates *more than four years* after the loans

11   were originated in 2007 or earlier[55]—in the wake of the worst housing market

12   decline and capital markets crisis since the Great Depression and at a time of high

13   unemployment—do not plausibly allege that underwriting standards were not

14   followed when the loans were originated.  *See, e.g.*, *Centaur*, 878 F. Supp. 2d

15   at 1020 (describing "the volatility of the U.S. economy" in 2007); *Luminent Mortg.*

16   *Capital, Inc. v. Merrill Lynch & Co.*, 652 F. Supp. 2d 576, 578, 593 (E.D. Pa. 2009)

17   (observing that "[t]here can be no serious dispute that after Plaintiffs purchased the

18   mortgage-backed securities at issue, the mortgage industry and mortgage-backed

19   securities have faced historically unprecedented declines with widespread

20   consequences," and holding that the "time period between the alleged

21   misrepresentation and the injury, combined with the market downturn in the

22   mortgage industry that developed in early- to mid-2007, is sufficient to undermine

23

24   ─────────────────────
25   [55] Plaintiff nowhere explains the significance of July 31, 2011 in *Franklin Bank*, October 31, 2011 in *Security Savings Bank*, or March 31, 2012 in *Guaranty Bank*—or, for that matter, the significance of any date four or five years after the loans were originated—other than to assert the legal conclusion that the delinquency rates as of those dates, for some unexplained reason, serve as "strong evidence that the originator[] . . . may have disregarded [its] underwriting standards."  *Franklin Bank* Am. Compl. ¶¶ 88-89; *Security Savings Bank* Am. Compl. ¶¶ 84-85; *Guaranty Bank* Am. Compl. ¶¶ 88-89.

1  the inference of a nexus between Defendants' misrepresentations and the

2  performance of the Junior Certificates").

3       *Second*, the amended complaints' allegations based on other complaints, a

4  report by the Financial Crisis Inquiry Commission, and settlements with state

5  attorneys general do not plead an actionable misrepresentation.  Indeed, such

6  allegations have been stricken repeatedly by courts in other MBS actions.  For

7  example, in *Maine State II*, this Court struck allegations in a complaint that

8  "quote[d] and cite[d] to unproven, untested allegations in complaints filed in

9  separate lawsuits" because "Plaintiffs cannot rely on allegations from other

10  complaints that the Plaintiffs themselves have not investigated" and "[l]ifting

11  allegations from other complaints does not constitute reasonable investigation as

12  required by Fed. R. Civ. P. 11(b)."  2011 WL 4389689, at *19-20; *accord*

13  *Footbridge*, 2010 WL 3790810, at *5 (striking allegations "based on pleadings and

14  settlements in other cases and government investigations"); *Boilermakers*, 748

15  F. Supp. 2d at 1255-56 (dismissing allegations drawn from a complaint by the New

16  York Attorney General).[56]  Such allegations do not suffice.

        **4.    Credit Ratings (*Guaranty Bank* Am. Compl. ¶¶ 98-103;**
17  **_Franklin Bank_ Am. Compl. ¶¶ 98-103; *Security Savings Bank***
18  **Am. Compl. ¶¶ 94-99).**

19       Plaintiff's allegations in *Guaranty Bank*, *Franklin Bank*, and *Security Savings*

20  *Bank* that the prospectus supplements misrepresented credit ratings are wholly

21  derivative of their other allegations.  For the same reasons that the amended

22  complaints' other allegations fail to state a claim, *see supra* at 35-46, these

23  allegations also fail as a matter of law.  *See McAfee v. Francis*, No. 11-cv-00821,

24  2012 WL 762118, at *7 (N.D. Cal. Mar 6, 2012) (dismissing claims because they

25

26      [56] *See also Lyons v. Bank of Am., N.A.*, No. C 11-1232, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) (striking allegations reciting Congressional hearings and
27  reports); *In re U.S. Foodservice Inc. Pricing Litig.*, No. 07 MD 1894, 2009 WL 5064468, at *27 (D. Conn. Dec. 15, 2009) (striking allegations discussing civil
28  and criminal investigations of the defendants and their executives).

1  were derivative of a failed claim); *Levin v. Citibank, N.A.*, No. C 09-0350, 2009

2  WL 3008378, at *7 (N.D. Cal. Sept. 17, 2009) (same).[57]

3                        **CONCLUSION**

4          For the foregoing reasons, Defendants respectfully request that this Court

5  dismiss the amended complaints in *Guaranty Bank*, *Franklin Bank*, and *Security*

6  *Savings Bank* in their entirety and with prejudice and award such other and further

7  relief as the Court deems appropriate.

8  Dated:  May 16, 2013                    Defendants Countrywide Securities
                                           Corporation, CWALT, Inc., and
9                                          Countrywide Financial Corporation in
                                           *Franklin Bank* and *Guaranty Bank* and
10                                         Defendant CWMBS, Inc. in *Franklin Bank*

11                                         By their attorneys,

12                                         /s/ Brian E. Pastuszenski
13                                         Brian E. Pastuszenski (*pro hac vice*)
                                           Lloyd Winawer (State Bar No. 157823)
14                                         Inez H. Friedman-Boyce (*pro hac vice*)
                                           Daniel Roeser (*pro hac vice*)
15                                         Adam Slutsky (*pro hac vice*)

16

17

18

19

20

21  _____

22  [57] In addition, the credit ratings are non-actionable opinions because the amended
    complaints in all three cases do not allege facts showing that the rating agencies (or
    Defendants) believed that those ratings were inaccurate when made. *See Baroi*,
23  2012 WL 2847919, at *2 (noting that "estimates, opinions, or promises of future
    performance" are generally not actionable under the Nevada Securities Act); *Aegis*,
24  2007 WL 906328, at *6 ("[S]tatements of opinion, including opinions regarding
    value of the securities, are generally not actionable under article 581-33 of the
25  TSA."); *Paull*, 987 S.W.2d at 218-19 (same); *accord In re IndyMac*, 718 F. Supp.
    2d at 512 (dismissing allegations concerning credit ratings that "do not support a
26  plausible inference that the ratings did not express [the] rating agency's judgment at
    the time they were issued about the likelihood that each Certificate's holders would
27  be paid"); *Emps.' Ret. Sys of Gov't of V.I.*, 804 F. Supp. 2d at 154 (dismissing
    allegations concerning credit ratings where the "plaintiff does not . . . allege that the
28  ratings agencies believed . . . their ratings to be inaccurate").

1    Dated:  May 16, 2013                Defendant Banc of America Securities LLC
                                         in *Security Savings Bank*

2
                                         By its attorneys,
3
                                         /s/ James C. Rutten (*with permission*)
4                                        Marc T.G. Dworsky (State Bar No. 157413)
                                         *marc.dworsky@mto.com*
5                                        James C. Rutten (State Bar No. 201791)
                                         *james.rutten@mto.com*
6                                        MUNGER, TOLLES & OLSON LLP
                                         355 South Grand Avenue, 35th Floor
7                                        Los Angeles, CA 90071
                                         Telephone: 213-683-9100
8                                        Facsimile: 213-687-3702

9                                        Achyut J. Phadke (State Bar No. 261567)
                                         *achyut.phadke@mto.com*
10                                       MUNGER, TOLLES & OLSON LLP
                                         560 Mission Street, 27th Floor
11                                       San Francisco, CA 94105
                                         Telephone: 415-512-4000
12                                       Facsimile: 415-512-4077

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28