1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Links: 50, 51, 64, 67**

JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORPORATION MORTGAGE-BACKED SECURITIES LITIGATION | Case No. 2:11-ML-02265-MRP (MANx) |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR GUARANTY BANK | Case No. 2:12-CV-08558-MRP (MANx) |
| Plaintiff, v. | **Order Re Motion to Dismiss the First Amended Complaint** |
| COUNTRYWIDE SECURITIES CORPORATION, *et al.*, Defendants. | |

# I.  Introduction

Guaranty Bank was a federally insured depository institution that failed after the 2007 and 2008 financial crisis.  The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), codified in Title 12 of the United States Code, authorizes the Federal Deposit Insurance Corporation ("FDIC") to act as receiver for failed depository institutions.  As a result of the financial crisis, the FDIC was appointed as receiver to various failed banks across the country, including Guaranty Bank.  In its capacity as receiver, the FDIC succeeds to all of the legal rights of the failed institution, including the right to sue on claims previously held by the failed institution.  12 U.S.C. §1821(d)(2)(A).  The FDIC raises claims that center on alleged misrepresentations by various financial institutions involved in the packaging, marketing, and sale of residential mortgage-backed securities ("RMBS") purchased by Guaranty Bank.  The RMBS at issue were created through a process known as "securitization."   Securitization involves the creation of pools of residential mortgage loans, each of which is designed to produce cash flows from payment on the loans.  The loans were pooled and sold to trusts, which backed certificates issued by those trusts.  The certificates entitled the holder to a portion of the cash flow from the pool of underlying mortgages.  The certificates were sold to underwriters, who sold them to various banks, including Guaranty Bank.

# II. Background

Between July 2005 and April 2006, Guaranty Bank purchased eight RMBS certificates[1] for approximately $1.5 billion.  CWALT Inc. issued and Countrywide Home Loans originated or acquired all eight of the certificates.  On August 21,

---

[1] Those RMBS certificates are as follows: (1) CWALT 2006-OA2 A-7; (2) CWALT 2005-58 A-3; (3) CWALT 2005-51 3-A-1; (4) CWALT 2005-41 2-A-1; (5) CWALT 2005-81 A-4; (6) CWALT 2005-76 1-A-2; (7) CWALT 2005-62 1-A-2; and (8) CWALT 2005-38 A-2.  Guaranty Bank First Am. Compl. ¶ 29, Schedules 1-8.

2009, Guaranty Bank failed and the FDIC was appointed as receiver.  On August 17, 2012, the FDIC sued Countrywide Securities Corporation, CWALT, Inc. ("CWALT"), Countrywide Financial Corporation ("CFC"), Bank of America Corporation ("BAC"), Deutsche Bank Securities, Inc. ("Deutsche Bank"), and Goldman, Sachs & Co. ("Goldman Sachs") in Texas state court for alleged violations of federal and state securities laws.  The complaint alleges that the offering documents which created and marketed the eight RMBS certificates purchased by Guaranty Bank contained material misstatements, in violation of Sections 11 and 12(a)(2) of the Securities Act of 1933 and Article 581-33 of the Texas Securities Act.  This case was removed to the United States District Court for the Western District of Texas on September 20, 2012 and was transferred to this Court by the Judicial Panel on Multidistrict Litigation on October 5, 2012. After the Court denied the FDIC's motion to remand, the FDIC filed an amended complaint on March 18, 2013.  Countrywide Securities, Deutsche Bank, and Goldman Sacs are sued as underwriters for the certificates.[2]  The FDIC sues CFC under Section 15 of the 1933 Act for its alleged control over the misrepresentations, and BAC as successor-in-interest to the other alleged violators. Defendants seek dismissal of all the state and federal claims in the FDIC's amended complaint.

### III.    Legal Standard

A Rule 12(b)(6) motion to dismiss should be granted when, assuming the truth of the plaintiffs' allegations, the complaint fails to state a claim for which relief can be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must assume the truth of the plaintiffs' allegations and draw all reasonable inferences in

---

[2] Specifically, the FDIC sues Countrywide Securities as underwriter for certificates CWALT 2006-OA2 A-7, CWALT 2005-58 A-3, CWALT 2005-51 3-A-1, and CWALT 2005-41 2-A-1; Goldman Sachs as underwriter for certificate CWALT 2005-81 A-4; and Deutsche Bank as underwriter for certificates CWALT 2005-76 1-A-2, CWALT 2005-62 1-A-2, and CWALT 2005-38 A-2.

the plaintiffs' favor.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  The Court is not required, however, to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  A court reads the complaint as a whole, together with matters appropriate for judicial notice, rather than isolating allegations and taking them out of context.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## IV.  Discussion

### A. ALL OF GUARANTY BANK'S FEDERAL SECURITIES CLAIMS ARE TIME-BARRED

Causes of Action B, C, and D in the FDIC's First Amended Complaint assert violations of the Securities Act of 1933.  Section 13 of the Securities Act provides a three-year statute of repose for all claims brought under Sections 11 and 12(a)(2).  15 U.S.C. § 77m.  The statue of repose for a Section 11 claim commences on the date that the security was "bona fide offered to the public," while the repose period for a Section 12(a)(2) claim begins to run on the date "of the sale" to plaintiffs.  *Id.*  All eight of the certificates at issue were offered to the public and purchased by Guaranty Bank by April 28, 2006—*i.e.*, more than three years before the FDIC was appointed as receiver for Guaranty Bank.  The FDIC's federal securities claims are therefore time-barred.   Tolling is not available for the reasons set forth in *Federal Deposit Insurance Corp. as Receiver for Security Savings Bank*, No. 2:12–CV–06690, 2013 WL 1191785, at *6–12 (C.D. Cal. Mar. 21, 2013) (hereinafter "*Security Savings Bank*"), and *Federal Deposit Insurance Corp. as Receiver for Strategic Capital Bank v. Countrywide Financial Corp.*, No. 2:12–CV–4354, 2012 WL 5900973, at *8–14 (C.D. Cal. Nov. 21, 2012).  Causes of Action B, C, and D in the First Amended Complaint are time-barred and are thus **DISMISSED WITH PREJUDICE.**

**B. THE STATUTE OF LIMITATIONS UNDER THE TEXAS SECURITIES ACT HAD NOT EXPIRED BY AUGUST 21, 2009**

The FDIC alleges that the Offering Documents for the eight certificates purchased by Guaranty Bank contain material misrepresentations, in violation of Article 581-33 of the Texas Securities Act ("TSA").  Under the TSA, a plaintiff must bring suit within "three years after discovery of the untruth or omission, or after discovery should have been made by the exercise of reasonable diligence."  Tex. Rev. Civ. Stat. Ann. art. 581-33(H)(2)(a).  The TSA's three-year statute of limitations had not expired by the date of receivership because a diligent investor could not have discovered the alleged misstatements in the Offering Documents by August 21, 2006, three years before the FDIC was appointed as receiver for Guaranty Bank.  *See, e.g.*, *Fed. Deposit Ins. Corp. as Receiver for United W. Bank v. Countrywide Fin. Corp.*, 2:11–CV–10400, 2013 WL 49727, at *1 (C.D. Cal. Jan. 3, 2013) ("[R]easonable investors cannot, as a matter of law, be held to have discovered misstatements until after August 31, 2007.").  The TSA claims were live on August 21, 2009, so the FDIC had at least three years to bring the claims by way of FIRREA's extender provision.  12 U.S.C. § 1821(d)(14).  Because the complaint was filed on August 17, 2012, Count A is not time-barred on statute of limitations grounds.

**C. THE TEXAS SECURITIES ACT'S STATUTE OF REPOSE**

In addition to the three-year statute of limitations, the TSA provides that "[n]o person may sue . . . more than five years after the sale" of the security in question.  Tex. Rev. Civ. Stat. Ann. art. 581-33(H)(2)(b).  The FDIC contends that Article 581-33(H)(2)(b) is a statute of repose that is extended under Section 1821(d)(14) by at least three years after the date of receivership.  Because Guaranty Bank purchased all eight of the certificates at issue after August 21, 2004—five years before Guaranty Bank entered into receivership—the FDIC contends that under FIRREA's extender provision it "had at least three more years

1  to file these claims, which it did on August 17, 2012." Br. in Opp. at 11.

2  FIRREA's extender provision provides in relevant part:

3      (14) Statute of limitations for actions brought by conservator or receiver

4          (A) In general.  Notwithstanding any provision of any contract, the

5          applicable statute of limitations with regard to any action brought by the

6          Corporation as conservator or receiver shall be—

7              (i) in the case of any contract claim, the longer of—

8                  (I) the 6-year period beginning on the date the claim accrues; or

9                  (II) the period applicable under State law; and

10             (ii) in the case of any tort claim (other than a claim which is subject to

11             section 1441a(b)(14) of this title), the longer of—

12                 (I) the 3-year period beginning on the date the claim accrues; or

13                 (II) the period applicable under State law.

14  12 U.S.C. § 1821(d)(14).  The FDIC contends that the term "statute of limitations"

15  contained in Section 1821(d)(14) also refers to statutes of repose.  However, an

16  important distinction exists between the terms "statute of limitations" and "statute

17  of repose."  The former "requires a lawsuit to be filed within a specific period of

18  time after a legal right has been violated."  *McDonald v. Sun Oil Co.*, 548 F.3d

19  774, 779 (9th Cir. 2008) (quotation omitted).  Among other things, statutes of

20  limitations are designed to "relieve courts of the burden of adjudicating stale

21  claims when a plaintiff has slept on his rights."  *Albillo-De Leon v. Gonzales*, 410

22  F.3d 1090, 1095 (9th Cir. 2005) (citation omitted).  Statues of repose, on the other

23  hand, stand as a "fixed, statutory cutoff date, usually independent of any variable,

24  such as claimant's awareness of a violation."  *Munoz v. Ashcroft*, 339 F.3d 950,

25  957 (9th Cir. 2003).  Statutes of repose are concerned with affording defendants a

26  measure of finality by creating an absolute time limit on potential liability.  *See*

27  *McDonald*, 548 F.3d at 780.  For this reason, statutes of repose are seen as having

28  a "substantive effect because [they] can bar a suit even before the cause of action

could have accrued, or, for that matter, retroactively after the cause of action has accrued." *Underwood Cotton Co., Inc. v. Hyundai Merch. Marine (Am.), Inc.*, 288 F.3d 405, 408 (9th Cir. 2002); *see also Police and Fire Ret. Sys. Of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2013) ("Thus, in contrast to statutes of limitations, statutes of repose create a *substantive* right in those protected to be free from liability after a legislatively-determined period of time.") (quotation marks and citation omitted).

In *Federal Housing Financial Agency v. Countrywide Financial Corp.*, 900 F. Supp. 2d 1055 (C.D. Cal. 2012) ("*FHFA v. Countrywide*"), this Court held that a nearly identical extender provision in the Housing and Economic Recovery Act ("HERA"), applies to the statute of repose contained in Section 13 of the federal Securities Act.  Relying on the reasoning in that case, the FDIC asserts that FIRREA's extender provision should also apply to state statutes of repose.  In so arguing, the FDIC cites the Court's prior rulings that have applied FIRREA's extender provision to the TSA and the Nevada Securities Act ("NSA").  *See Fed. Deposit Ins. Corp. as receiver for Franklin Bank*, No. 2:12-–CV–3279, slip op. at 2 (C.D. Cal. Mar. 21, 2013) (applying Section 1821 to the TSA's five-year limitation period); *Security Savings Bank*, 2013 WL 1191785, at *12 (applying Section 1821 to the NSA's five-year limitations period).  Those rulings dealt primarily with whether FIRREA's extender provision applies to the federally created statute of repose contained in Section 13 of the Securities Act.  Finding that it does, the Court then applied the extender provision to the five-year limitation contained in the TSA and NSA.  Notably, those cases never held explicitly that Section 1821(d)(14) extends *state* statutes of repose, a question that has troubled the Court for some time.  The Court now takes the opportunity to address this issue in detail.

**D. ARTICLE 581-33(H)(2)(B) OF THE TEXAS SECURITIES ACT IS A STATUTE OF REPOSE**

The Court must first determine whether the TSA's five-year limitations provision is, in fact, a statute of repose. By its plain terms, article 581-33(H)(2)(b) functions like a statute of repose because it establishes a fixed cut-off point—"[n]o person may sue . . . more than five years after the sale"—regardless of when the plaintiff discovered, or should have discovered, the alleged harm. When interpreting state statutes the Court is "bound by the pronouncements of the state's highest court . . . . If the state's highest court has not addressed the issue, then we must predict how that court would interpret the statute." *Dyach v. N. Mariana Islands*, 317 F.3d 1030, 1034 (9th Cir. 2003). Texas state courts have treated the five-year limitation under the TSA as a statute of repose. *See, e.g.*, *Williams v. Khalaf*, 802 S.W.2d 651, 654 n.3 (Tex. 1990) (noting that a claim under Article 581-33(H)(2)(b) of the TSA may "in no event" be brought "more than five years after the sale"); *Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 401 (Tex. Ct. App. 2012) (interpreting an identical time limitation under the TSA as a "five-year repose period").[3] The Court therefore finds that the five-year limitation contained in article 581-33(H)(2)(b ) is a statute of repose.

---

[3] Federal district courts in Texas have also interpreted Article 581-33(H)(2)(b) as a statute of repose. *See Escalon v. World Grp. Sec., Inc.*, No. 07-CV-214, 2008 WL 5572823, at *3 (N.D. Tex. Nov. 14, 2008) ("Article 581-33 and 10b-5 have similar rules governing their respective limitations and repose periods . . . Unlike the limitations periods, which do not run until after the discovery of the facts constituting a violation, the repose periods begin to run the moment the violation (or sale) occurs, regardless of the claimant's discovery.") (citations omitted); *In re Enron Corp. Sec., Derivate & "ERISA" Litig.*, 490 F. Supp. 2d 784, 805 (S.D. Tex. 2007) ("Furthermore, under the TSA's general limitations period and period of repose, claims must be brought the earlier of (a) more than three years after the discovery of the untruth or omission, or after discovery should have been made by the exercise of reasonable diligence or (b) within five years after the sale.") (citation omitted).

**E.  FEDERAL PREEMPTION OF THE TEXAS SECURITIES ACT'S STATUTE OF REPOSE**

Whether FIRREA extends the TSA's statutes of repose is a question of preemption.  Article 581-33(H)(2)(b) reflects the State's intent to set a fixed cut-off point to file suit.  FIRREA's extender provision, however, supplants state time limitations under certain circumstances and grants the FDIC additional time to bring claims.  Because federal law supersedes state law under Article 6 of the U.S. Constitution, the TSA's statute of repose is displaced by FIRREA if Congress intended such an outcome.  *See Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) ("[T]he purpose of Congress is the ultimate touchstone of pre-emption analysis.") (quotation marks and citation omitted).  In ascertaining congressional intent, the Court notes that the States have historically regulated the sale of securities under various "blue-sky" laws.  *See Edgar v. MITE Corp.*, 457 U.S. 624, 641 (1982) ("States have traditionally regulated intrastate securities transactions, and this Court has upheld the authority of States to enact 'blue-sky' laws against Commerce Clause challenges on several occasions.") (citations omitted); *see also* Richard W. Painter,  *Responding to a False Alarm: Federal Preemption of State Securities Fraud Causes of Action*, 84 Cornell L. Rev. 1, 20 (1998) (noting that forty-nine states had already passed their own blue sky laws by the time Congress passed the Securities Act of 1933).  Further, the States have long regulated their own failing banks under state codes governing general business insolvencies.[4]  By 1933, a majority of states had passed laws regulating state-chartered banks and had established supervisory authorities to oversee them in the event of failure.  *Id.*; *see*

---

[4] *See Managing the Crisis: The FDIC and RTC Experience* 212, *http://www.fdic.gov/bank/historical/managing/history1-08.pdf*. The Court takes judicial notice of the FDIC's publication as a government document that is "not [] subject to reasonable dispute" and falls within the category of "[p]ublic records and government documents available from reliable sources on the Internet."  *L'Garde, Inc v. Raytheon Space and Airborne Sys.*, 805 F. Supp. 2d 932, 938 (C.D. Cal. 2011) (citations omitted).

1   *also* Peter P. Swire, *Bank Insolvency Law Now That It Matters Again*, 42 Duke L.J.

2   469, 478-79 (1992) (discussing the history of bank insolvency law).  In 1991,

3   Congress conferred to the FDIC for the first time the authority to appoint itself as

4   receiver of state banks without the state's approval.  *See Managing the Crisis: The*

5   *FDIC and RTC Experience* 215.

6          The States' traditional role in regulating securities transactions and troubled

7   banks is significant because the Supreme Court has cautioned that "we have never

8   assumed lightly that Congress has derogated state regulation, but instead have

9   addressed claims of pre-emption with the starting presumption that Congress does

10  not intend to supplant state law."  *N.Y. State Conference of Blue Cross & Blue*

11  *Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995); *see also Altria Grp.,*

12  *Inc. v. Good*, 555 U.S. 70, 77 (2008) ("[T]he historic police powers of the State

13  [are] not to be superseded by the Federal Act unless that was the clear and manifest

14  purpose of Congress.") (quotation marks and citation omitted).   One implication

15  of the presumption is that "when the text of a pre-emption clause is susceptible of

16  more than one plausible reading, courts ordinarily 'accept the reading that

17  disfavors pre-emption.'"  *Good*, 555 U.S. at 77 (quoting *Bates v. Dow*

18  *Agrosciences LLC*, 544 U.S. 431, 449 (2005)).[5]  Mindful of the presumption

19  _____

20  [5] Citing the Supreme Court's decision in *United States v. Locke*, 529 U.S. 89, 108 (2000), several
    Ninth Circuit cases have broadly held that the presumption is inapplicable in the area of national

21  banking because Congress has long regulated such banks.  *See, e.g.*, *Wells Fargo Bank N.A. v.
    Boutris*, 419 F.3d 949, 956 (9th Cir. 2005); *Bank of Am. v. City & Cnty. of S.F.*, 309 F.3d 551,

22  558 (9th Cir. 2002).  The Supreme Court has since clarified that the presumption applies "in all
    pre-emption cases, and particularly in those in which Congress has legislated . . . in a field which

23  the States have traditionally occupied," even when "the Federal Government has regulated [in
    that field] for more than a century."  *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009) (internal

24  quotation marks and citation omitted).  The Supreme Court "rel[ies] on the presumption because
    respect for the states as independent sovereigns in our federal systems leads [it] to assume that

25  Congress does not cavalierly pre-empt state-law causes of action.  The presumption thus
    accounts for the historic presence of state law but does not rely on the absence of federal

26  regulation."  *Id.*  The Court therefore finds that the presumption against preemption applies when
    analyzing FIRREA.  In addition, because the presumption against preemption is grounded in

27  concerns for state sovereignty, the Court finds that the presumption supersedes the notion that

28

10

1   against preemption, the Court now considers whether FIRREA preempts the TSA's

2   statute of repose.

3   **A. EXPRESS PREEMPTION**

4       The Court must first determine whether FIRREA's extender provision

5   expressly preempts the TSA's statute of repose. *See Fidelity Fed. Sav. & Loan*

6   *Ass'n v. Cuesta et al.*, 458 U.S. 141, 153 (1982). Express preemption analysis

7   involves the use of statutory interpretation techniques to determine the scope of

8   preemption described by the clause. *Medtronic v. Lohr*, 518 U.S. 470, 484 (1996).

9   While the plain language of Section 1821(d)(14) indicates that Congress expressly

10  preempted state statutes of limitation to the extent they limit the prescribed federal

11  limitations period, the Court must still identify "the domain expressly pre-empted

12  by that language" and whether it includes statutes of repose. *Id.*; *accord Riegel v.*

13  *Medtronic Inc.*, 552 U.S. 334–35 (2008) ("A preemption clause tells us that

14  Congress intended to supersede or modify state law to some extent. In the absence

15  of legislative precision, however, courts may face the task of determining the

16  substance and scope of Congress' displacement of state law."). This Court

17  previously held that *McDonald v. Sun Oil Co.* provides the analytical approach for

18  interpreting whether the term "statute of limitation" includes periods of repose.

19  *See FHFA v. Countrywide*, 900 F. Supp. 2d. at 1065. Under *McDonald*, courts

20  must first consider the statutory text in light of the ordinary meaning of the term

21  "statute of limitation" at the time Congress enacted the law. 548 F.3d. at 780. If

22  the meaning of the term is ambiguous, courts must then "review the legislative

23  history of the section in order to determine Congress' intent." *Id.* at 782.

24      In *McDonald* , the Ninth Circuit considered whether an exception to state

25  statutes of limitation imposed by the Comprehensive Environmental Repose,

26

27  "ambiguous statutes of limitation will be interpreted in a light most favorable to the

28  government." *FDIC. v. Former Officers and Dirs. of Metro. Bank*, 884 F.2d 1304, 1309 (9th Cir. 1989).

Compensation and Liability Act ("CERCLA"), applied to state statutes of repose. *Id.* at 779. CERCLA displaces state statutes of limitations that commence earlier than the federally required period for injuries caused by environmental contamination. 42 U.S.C. § 9658(a)(1). The Ninth Circuit determined that the ordinary meaning of "[t]he term 'statute of limitations' was ambiguous regarding whether it included statutes of repose . . . in 1986" when the statute was enacted. *Id.* at 781. In the context of HERA's extender provision, this Court concluded that Congress and federal courts continued to confuse the terms "statute of limitations" and "statute of repose" in 2008. *FHFA v. Countrywide*, at 1063–66. In *Security Savings Bank* , the Court found—and continues to find—that the term "statute of limitation" was ambiguous with respect to whether the term included statutes of repose when Congress passed FIRREA in 1989. *Security Savings Bank*, 2013 WL 1191785, at *2.

Per *McDonald*, when the ordinary meaning of the term "statute of limitation" is ambiguous, the Court must turn to FIRREA's legislative history for further guidance. *See McDonald*, 548 F.3d at 782. It appears that the only piece of relevant evidence is a statement from Senator Riegle indicating that the extender provision "will significantly increase the amount of money that can be recovered by the Federal Government through litigation" and "should be construed to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods." 135 Cong.Rec. S10205 (Daily Ed. Aug. 4, 1989). This statement is insufficient to overcome the presumption against preemption, particularly when compared to the legislative history considered in *McDonald*. There, the Ninth Circuit found that the legislative history of CERCLA strongly indicated that Congress' use of the term "statute of limitations" included statutes of repose based on two critical pieces of evidence. *See McDonald*, 548 F.3d at 782–83. The first was a committee print

that recommended "the repeal of the statutes of repose, which in a number of states have the same effect as some statutes of limitation in barring plaintiff's claim before he knows that he has one." *Id.* at 782.   The second was a conference report which showed Congress' concern that state limitation periods could function like a statute of repose, effectively barring legitimate causes of action before parties are aware of their injury. *Id.* at 783.  In stark contrast to *McDonald*, FIRREA's legislative history neither mentions statutes of repose nor implies a concern for their effects.  The Court cannot find, and the FDIC has been unable to produce, "clear and manifest" evidence to overcome the presumption that Congress did not intend to preempt areas of traditional state regulation.

## B. IMPLIED PREEMPTION

Where the statute at issue does not expressly preempt state law, the Court looks for implied preemption. *See Cipollone*, 505 U.S. at 516.  Implied preemption takes two forms: field preemption and conflict preemption.  Field preemption exists where the "federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Id.* (quotation marks and citation omitted).  Here, FIRREA's extender provision clearly leaves room for the operation of state law by recognizing state causes of action sounding in contract and tort. 12 U.S.C. § 1821(d)(14).  Further, the extender provision saves state statutes of limitations from preemption to the extent they exceed the prescribed federal limitations period.  12 U.S.C. § 1821(d)(14); *see also O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87 (1994) (holding that FIRREA requires the FDIC "to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise").

The Supreme Court has recognized two forms of conflict preemption: impossibility and obstacle. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995).  Regarding the former category of preemption, the FDIC cannot now

1   comply with the TSA's five-year statute of repose while also availing itself of
2   FIRREA's extender provision.  But impossibility preemption turns on "whether
3   compliance is impossible, not whether noncompliance is possible." *Draper v.*
4   *Chiapuzio*, 9 F.3d 1391, 1393 (9th Cir. 1993) ("Here, compliance with both federal
5   and state law is not a 'physical impossibility' . . . . Only a plaintiff who waits more
6   than one year to give the required notice under the state statute can no longer
7   comply with both state and federal law."); *see also Robertson v. Wegmann*, 436
8   U.S. 584, 593 (1978) ("A state statute cannot be considered 'inconsistent' with
9   federal law merely because the statute causes the plaintiff to lose the litigation.").
10  Impossibility preemption is therefore inapplicable because the FDIC could have
11  timely brought the TSA claims had it filed suit within five years of the date the
12  security was sold.[6]

13          The question of preemption thus turns on whether the TSA's statute of
14  repose "stands as an obstacle to the accomplishment and execution of the full
15  purposes and objectives of Congress." *Arizona v. United States*, 132 S. Ct. 2492,
16  2505 (2012) (quotation marks and citation omitted).  "What is a sufficient obstacle
17  is a matter of judgment, to be informed by examining the federal statute as a whole
18  and identifying its purpose and intended effect." *Crosby v. Nat'l Foreign Trade*
19  *Council*, 530 U.S. 363, 373 (2000).  The mere fact of "[t]ension between federal
20  and state law is not enough to establish conflict preemption." *Incalza v. Fendi N.*
21  *Am., Inc.,* 479 F.3d 1005, 1010 (9th Cir. 2007) (citing *Silkwood v. Kerr-McGee*
22  *Corp.,* 464 U.S. 238, 256 (1984)).   Rather, conflict preemption occurs "only in
23  'those situations where conflicts will necessarily arise.'"  *Id.* (quoting *Goldstein v.*
24  *California*, 412 U.S. 546, 554 (1973)).  Where, as here, the presumption against
25  preemption applies, a "sharp" conflict must exist between state and federal law.
26
27
28
_____
[6] In fact, the FDIC had approximately one year to file suit after it became receiver of Guaranty Bank before the TSA's statute of repose foreclosed any right to sue.

14

1   *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988); *see also Chapman v.*
2   *Westinghouse Elec. Corp.*, 911 F.2d 267, 268 (9th Cir. 1990);  *Marsh v.*
3   *Rosenbloom*, 499 F.3d 165, 178 (2d Cir. 2007); *Integrated Solutions, Inc. v.*
4   *Service Support Specialties, Inc.*, 124 F.3d 487, 492 n.3 (3d Cir. 1997).

5        FIRREA's "core purpose" is to "ensure that the assets of a failed institution
6   are distributed fairly and promptly among those with valid claims against the
7   institution, and to expeditiously wind up the affairs of failed banks."  *McCarthy v.*
8   *FDIC*, 348 F.3d 1075, 1079 (9th Cir. 2003); *see also GECCMC 2005-C1 Plummer*
9   *Street Office Ltd. v. JPMorgan Chase Bank*, 671 F.3d 1027, 1035 (9th Cir. 2012);
10  *see also*; *Office & Prof'l Employees Int'l. Union, Local 2 v. FDIC*, 962 F.2d 63, 68
11  (D.C. Cir. 1992).  A well-capitalized insurance fund—enriched in part by
12  recoveries from litigation—is certainly one component to further this purpose.[7]
13  But the Supreme Court, in a case quite similar to the one here, has explicitly held
14  that FIRREA's cost-recovery objective is insufficient to preempt state law.  In
15  *O'Melveny & Myers*, the FDIC asserted professional negligence and breach of
16  fiduciary duty claims against former counsel of a failed financial institution.  512
17  U.S. at 82.  Although California law created the right upon which the FDIC sued,
18  the FDIC argued that federal common law should preempt state law regarding
19  imputation of knowledge.  *Id.*  In rejecting this argument, the Supreme Court noted
20  that "[t]he closest [the FDIC] comes to identifying a specific, concrete federal

21

22

23  [7] As near as the Court can tell, any recoveries from this suit will serve primarily, if not solely, to
    replenish the deposit insurance fund.  *See, e.g., Fed. Deposit Ins. Corp. v. Wright*, 942 F.2d
24  1089, 1090 n.1 (7th Cir. 1991); *Gaff v. Fed. Deposit Ins. Corp.*, 919 F.2d 384, 385 n.1 (6th Cir.
    1990) (detailing the process by which the FDIC obtains the right to sue from failed banks in
25  order to replenish the insurance fund); *Kanany v. Union Bank, N.A.*, No. C11−6062 RJB, 2012
    WL 5258847 at *2 (W.D. Wash. Oct. 24, 2012).  The FDIC in this case is not acting to promptly
26  resolve the affairs of a failed bank.  *See FDIC v. State Bank of Virden*, 893 F.2d 139, 142 (7th
    Cir. 1990) ("Once the FDIC transfers an asset to its corporate side, the suit to collect no longer
27  affects the estate.  FDIC will keep the money (reducing the net distribution from the insurance
    fund), not apportion it among creditors.").
28

policy or interest that is compromised by California law is its contention that state rules regarding the imputation of knowledge might deplete the insurance fund." *Id.* at 88 (quotation marks and citation omitted).  The Supreme Court held that "there is no federal policy that the fund should always win" and "more money arguments" will not suffice to preempt state law.  *Id.*  Several circuits, including the Ninth Circuit, have likewise found that a federal interest in preserving the deposit insurance fund is insufficient to preempt state laws.  *See*, *e.g.*, *Ledo Fin. Corp. v. Summers*, 122 F.3d 825, 829 (9th Cir. 1997) ("Moreover, depletion of the insurance fund does not create a federal interest."); *Davidson v. FDIC*, 44 F.3d 246, 252 (5th Cir. 1995) (holding that the objective of "reduc[ing] the monetary exposure of the federal deposit insurance fund" is insufficient to preempt Texas foreclosure laws);  *Resolution Trust Corp. v. Artley*, 28 F.3d 1099, 1103 (11th Cir. 1994) (finding that a Georgia tolling law is not preempted by FIRREA on the grounds that "the statute causes the plaintiff to lose the litigation"); *cf. Marsh v. Rosenbloom*, 499 F.3d 165, 178–79 (2d 2007) (holding that CERLA's cost-recovery objective is not sufficient to preempt Delaware corporate law).  In affording defendants some peace of mind from the prospect of litigation, the TSA's statute of repose may occasionally extinguish claims on which the FDIC can sue to enrich the deposit insurance fund.  While this may at times create a degree of tension between the TSA and FIRREA, it certainly does not present the kind of sharp conflict needed to preempt state law.

Even if enriching the deposit insurance fund were a significant objective of FIRREA, the Court is unconvinced that Congress intended to substantively redefine state causes of action in furtherance of this purpose.  FIRREA provides that when the FDIC acts as receiver, it succeeds to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution."  12 U.S.C. § 1821(d)(2)(A)(i).  In other

words, the FDIC as receiver stepped "in the shoes" of Guaranty Bank, thereby "obtaining the rights of the insured depository institution that existed prior to receivership." *O'Melveny*, 512 U.S. at 86 (quotation marks omitted). Although FIRREA empowers the FDIC to sue on any state right it obtained from the failed institution, nowhere does FIRREA allow the FDIC to substantively define the nature and scope of those rights. *See id.* (finding that FIRREA "places the FDIC in the insolvent [institution's] shoes to pursue its claims under state law"). In fact, congressional acceptance of the states' role in defining the scope of their various causes of action is evidenced by the enactment of 12 U.S.C. §1821(k)(3), which authorizes the FDIC to sue directors or officers of insured institutions for "disregard of a duty of care . . . *as such terms are defined and determined under applicable State law*." (emphasis added)

Here, the state of Texas created the right upon which the FDIC sues. Under FIRREA, it is Texas law that defines the existence and scope of the right that the FDIC received from Guaranty Bank. The Texas Supreme Court has held that statutes of repose are not a procedural limitation but "a substantive definition of rights." *FDIC v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012) (quoting *Jefferson State Bank v. Lenk*, 323 S.W.3d 146, 147 n.2 (Tex. 2010)); *see also Trunkhill Capital, Inc. v. Jansma*, 905 S.W.2d 464, 467 (Tex. Ct. App. 1995) ("The effect of a statute of repose is that a party cannot possess, and never did possess, a cause of action if it *did not arise* within a given time period, regardless of the party's diligence after discovering the defect or problem; thus, a statute of repose has been said to be a substantive definition of rights.") (citation omitted). The TSA's statute of repose therefore defines, limits, and even terminates the right that the FDIC received from Guaranty Bank. Preemption in this case would effectively permit the FDIC to succeed to a substantially different right than that held by Guaranty Bank. *Cf. Waterview Mgmt. Co. v. FDIC*, 105 F.3d 696, 701 (D.C. Cir. 1997) (finding that state law governs contractual relationships under FIRREA and that receivers

1  cannot "increase the value of the asset in its hands by simply 'preempting' out of

2  existence pre-receivership contractual obligations"); *Resolution Trust Corp. v.*

3  *Diamond*, 45 F.3d 665, 670 (2d Cir. 1995) ("[T]he law of each state will furnish

4  the contract principles that govern the relationship; the RTC, like the FDIC in

5  *O'Melveny*, steps into the shoes of another entity having claims, rights, powers and

6  causes of action defined and limited by state law."). FIRREA does not manifest

7  Congress' intent to alter the very nature of state claims to better enable the FDIC to

8  enrich the deposit insurance fund. Therefore, the Court is unconvinced that the

9  TSA's statute of repose presents an obstacle to the accomplishment of FIRREA's

10  purpose.[8]

11  At the hearing on the motion to dismiss, counsel for the FDIC claimed that a

12  Texas Court of Appeals in *Colvest Mortgage, Inc. v. Clark*, 05-95-00989-CV, 1996

13  WL 429300 (Tex. Ct. App. July 23, 1996), held that FIRREA's extender provision

14  preempts state statutes of repose. This is simply wrong. At issue in *Colvest* was a

15  two-year limitation period under section 51.003(d) of the Texas Property Code. *Id.*

16  at *1. Although the court found that FIRREA's extender provision preempted the

17  statute, the *Colvest* court noted that Section 51.003(d) was a statute of limitation

18  and not a statute of repose. *Id.* at *3 n.1; *see also Trunkhill Capital, Inc. v.*

19  *Jansma*, 905 S.W.2d 464, 468 (Tex. Ct. App. 1995) ("We hold that section

20

21

22

23  [8] The Court's conclusion does not rest on whether the limitation period is classified as
   "substantive" versus "procedural." *See*, *e.g.*, *Burnett v. NY Cent. R. Co.*, 380 U.S. 424, 426–27

24  (1965); *see also Resolution Trust Corp. v. Olson*, 768 F. Supp. 283, 285 (D.Ariz. 1991) (finding
   that federal statutes cannot preempt state "substantive statutes of repose"). Rather, the Court

25  finds insufficient evidence that Congress intended to substantively redefine state causes of action
   in order to enrich the deposit insurance fund. Indeed, even Senator Riegle's statement that the

26  extender provision should be construed "to maximize potential recoveries," contemplates doing
   so only to the "extent permissible by law." This caveat suggests that FIRREA's cost-recovery

27  objectives, even if important, must yield to the substantive elements of the claim.

28

51.003(a) is a statute of limitations, not a statute of repose.").[9]  In fact, *Colvest* lends support to the Court's conclusion by distinguishing between time limits found in state statutes that merely codify and regulate common-law rights, such as Section 51.003(d), and statutes that actually create a cause of action, such as the TSA.  *See id.* at *3.  The former "cannot defeat the federal government's right to be free from State statutory limitations periods by codifying common-law rights and including a time period within which to assert those rights."  *Id.*  However, "[w]ith statutorily-created actions, time limits are not procedural statutes of limitation, but are substantive qualifications and conditions restricting the right to bring" the claim.  *Trunkhill*, 905 S.W.3d at 468.  Indeed, a Texas Court of Appeals in *Trunkhill* held that Section 51.003(a) was saved from preemption specifically because it was *not* a statute of repose and instead was a statute of limitations.  *Id.* at 467-69.

Therefore, because FIRREA's extender provision does not preempt Article 581-33(H)(2)(b), the FDIC lost the right to sue on all eight of the certificates before the FDIC filed this action.  Cause of Action A in the First Amended Complaint is time-barred and therefore **DISMISSED WITH PREJUDICE.**

## V. Conclusion

The FDIC's federal law claims are all time-barred by the statute of repose under Section 13 of the Securities Act.  No tolling doctrine saves those claims.  The FDIC's Texas Securities Act claim is time-barred by the statute of repose under article 581-33(H)(2)(b).  FIRREA's extender provision does not preempt article 581-33(H)(2)(b).  Because all of the FDIC's claims are dismissed as

---

[9] For the same reason, the FDIC's reliance on *Stonehedge/Fasa-Texas JDC v. Miller*, an unpublished opinion that is not even binding in the Fifth Circuit much less on the Court, is unavailing. No. 96-10037, 1997 WL 119899 at *1 (5th Cir. 1997). In that case, the Fifth Circuit, like *Colvest* and *Trunkhill*, found that FIRREA's extender provision preempted Section 51.003(d) because it was a statute of limitations and not a statute of repose.  *Id.* at *3.

untimely, the Court need not consider the successor-liability claims against BAC. All dismissals are with prejudice.

IT IS SO ORDERED.

DATED:  August 26, 2013

_____

Hon. Mariana R. Pfaelzer
United States District Judge